## MARYLAND CASUALTY CO. v. STARK.
### No. 9225.

Circuit Court of Appeals, Ninth Circuit.
Jan. 4, 1940.

---

"* * * Subject to its terms, limits and conditions this policy covers the insured in the event of death * * * due to * * drowning, choking in swallowing * * * asphyxiation * * *."

The following exceptive provision was set forth in the policy: "This policy shall not cover * * * death * , * * caused or contributed to directly or indirectly, wholly or partly, by bodily or mental infirmity, ptomaines, bacterial infections (except pyogenic infections which shall occur simultaneously with and through an accidental cut or wound * * *) or by any other kind of disease * * *."

The appellant contends that the evidence does not support the following finding of the court: "3. That on or about the 6th day of July, 1938, the said Charles William Stark accidentally fell into the Orr Ditch in Washoe County, Nevada, and as a direct result thereof, independently and exclusively of all other causes, the said Charles William Stark then and there died by drowning in said Orr Ditch. That said accident and death was not caused or contributed to directly or indirectly, wholly or partly, by bodily or mental infirmity, or by any kind of disease; that the hemorrhage on the brain of deceased disclosed at the autopsy was such that the deceased would have recovered therefrom and would not have died as a result thereof had he not accidentally fallen into the water in which he was drowned." ; and that the court erred in refusing to find as requested that: "on or about the 6th day of July, 1938, the said Charles William Stark suffered a spontaneous subarachnoid hemorrhage, said hemorrhage causing him to lose consciousness, thereby causing him to fall in the Orr Ditch in Washoe County, Nevada. That because of said hemorrhage and unconsciousness, Charles William Stark was unable to extricate himself from the said ditch and said hemorrhage caused Charles William Stark to become nauseated. That while in the water said Charles William Stark asphyxiated upon his own vomitus, said vomitus becoming lodged in his bronchial tree, and by reason of said asphyxiation Charles William Stark died."

The body of the insured was found floating in the flowing water of an irrigation ditch, 1,200 feet down current from a bridge across it. This bridge was of concrete and was guarded by two concrete abutments on the east and west sides. At the northerly end of each abutment was a

Geo. B. Thatcher, Wm. Woodburn, Wm. J. Forman, and Thatcher & Woodburn, all of Reno, Nev., for appellant.

Lester D. Summerfield, of Reno, Nev., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the district court in a jury-waived case on a policy insuring the deceased, Charles William Stark.

The policy stated the insurance to be:

"* * * against loss resulting from Bodily Injuries effected independently and exclusively of all other causes directly through accidental means, as follows:

* * *

space of about four feet which was left unguarded as to the ditch. The parties agree that the deceased fell from the bridge into the ditch at the point where it was not guarded. There were no witnesses to the falling nor to what happened to the deceased from 8:15 a. m. when he was seen leaving his office near the bridge until his body was found in the ditch at 8:30 a. m.

Appellant states the sole issue of fact made by the pleadings and tried before the court to be "whether the deceased died accidentally, independently and exclusively of all other causes, or whether bodily or mental infirmity or disease caused or contributed to, wholly or partly, directly or indirectly, his death." It makes no contention of suicide.

On the day of the death an autopsy was conducted. The autopsy report stated "* * * A recent subpial hemorrhage 3 cm. in diameter and ½ mm. thick, fairly well circumscribed, is found close to the great cerebral fissure on the upper surface of the right occipital lobe and has apparently ruptured subdurally, since a thin film of subdural hemorrhage is seen over the right frontal lobe anteriorally, in all apparently not over ⅔ cc. Incisions through the hemorrhage into the underlying brain tissue show no hemorrhages there or other evidence of cerebral contusion. Examination of the major branches of the circle of Willis reveals *normal arteries*. Multiple incisional examination of the brain, brain stem and cerebellum by the method of Nauwerck shows no congestion or *other pathology*." (Emphasis supplied.)

The report also stated "the mode of origin of the subpial ecchymosis is questionable. In all probability it was not due to external violence because of the absence of contusion of the scalp. It is very likely either to be due to asphyxiation or, less probably, spontaneous and prior to immersion of the body in the ditch water" and "* * * Sections of the brain at the site of the subpial hemorrhage reveal no vascular lesions to account for it. * * *"

The autopsy report concluded by stating the probable cause of death to be "Asphyxiation by means of drowning." There also is oral testimony of doctors who attended the autopsy that death was due to asphyxiation by drowning.

There is oral testimony by one of the doctors in attendance at the autopsy to the effect that the brain tissue was not diseased

and that the hemorrhage was caused by a blow or by the asphyxiation itself, that a spontaneous subarachnoid hemorrhage can result from increased intracranial pressure caused by severe straining. There is testimony by another doctor who attended the autopsy that there was no evidence of any disease of the brain or of the arteries of the brain and that his conclusion from the autopsy findings would be that the insured was in excellent health. He further testified that in his opinion there was not enough hemorrhage to cause dizziness, nausea or loss of consciousness and that asphyxiation, increasing the blood pressure, itself is one of the causes of subarachnoid hemorrhage. Several of the doctors who attended the autopsy expressed themselves as being in accord with the findings stated in the autopsy report as to the physical conditions revealed by the autopsy.

The principal evidence relied upon by appellant as showing bodily infirmity or disease is the testimony of three doctors that the deceased suffered a spontaneous subarachnoid hemorrhage prior to his death and the testimony of one doctor that such a hemorrhage is due to a congenital weakness of the blood vessels of the brain as a result of the faulty development of the vessels of the brain that has persisted since birth.

In opposition to this testimony is the autopsy report from which we have quoted and the oral testimony of doctors in attendance at the autopsy to the effect that brain tissue was not diseased, that the brain arteries were normal, that the general physical condition of insured was normal and that the hemorrhage was or could have been caused by the asphyxiation.

Rule 52 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that: "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses * * *."

We have reviewed the evidence, giving "due regard" to "the opportunity of the trial court to judge of the credibility of the witnesses", and as a result, particularly in view of the agreed fact that the insured fell into the water and in view of the oral testimony indicating healthy physical condition, that the cause of death was asphyxiation by drowning, that the hemorrhage followed rather than preceded the

fall and probably was caused by the asphyxiation, we hold there was no error in finding that the deceased "accidentally fell into the * * * [ditch] and as a direct result thereof, independently and exclusively of all other causes, the said * * * [deceased] then and there died by drowning in said * * * [ditch]. That said accident and death was not caused or contributed to directly or indirectly, wholly or partly, by bodily or mental infirmity, or by any kind of disease; * * *", and that there was no error in refusing to adopt the finding requested by appellant.

It is by no means inconceivable nor inconsistent with testimony which the district court was at liberty to accept, that the insured, who had eaten a heavy breakfast, suffered what is known in lay terms as an "upset stomach", that he leaned over the edge of the bridge to vomit, lost his balance, fell into the water and in the struggle to extricate himself suffered the hemorrhage and suffocated while immersed in the water and attempting to exhale vomitus from his respiratory organs.

It will be noted from the quotation in the fore part of this opinion that the trial court also found "that the hemorrhage on the brain of deceased disclosed at the autopsy was such that the deceased would have recovered therefrom and would not have died as a result thereof had he not accidentally fallen into the water in which he was drowned." Oral testimony of the doctors conflicted on this point and the evidence does not warrant our setting aside this finding of the court. There is nothing in this finding inconsistent with the judgment in favor of the appellee. It does not find bodily infirmity or disease, or that the hemorrhage resulted therefrom, or that any of these caused or contributed to the death. Moreover, this finding is not inconsistent with the view that the hemorrhage *succeeded* the fall. If it can be said that a finding the hemorrhage *preceded* the fall would mitigate against the judgment, and that the finding under discussion is ambiguous and open to such interpretation, nevertheless appellant cannot win a reversal for we accept the interpretation which supports the judgment. Cf. cases collected in 5 Corpus Juris Secundum, Appeal and Error, § 1564, pages 425, 426, note 31.

Judgment affirmed.