## NATIONAL LABOR RELATIONS BOARD v. STERLING ELECTRIC MOTORS. Inc.

No. 9209.

Circuit Court of Appeals, Ninth Circuit.

Sept. 13, 1940.

Appeal Dismissed Oct. 28, 1940.

See 61 S.Ct. 69, 85 L.Ed. ———.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, and Laurence A. Knapp, Asst. Gen. Counsel, National Labor Relations Board, all of Washington, D. C., for petitioner.

Hardy & Horwin, Leonard Horwin, and Jack W. Hardy, all of Los Angeles, Cal., for respondent.

Before DENMAN, MATHEWS and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

This opinion and the foregoing accompanying order arise from the declination of the National Labor Relations Board, for a period of many months, to act under § 10 (e) of the National Labor Relations Act, 29 U.S.C.A. § 160(e), on our commitment to it to take further testimony on a charge against respondent of fraudulent deceit constituting an unfair labor practice. From facts later narrated, the delay appears to be purposed to facilitate the Board in pressing what is, in effect, an ex parte certiorari proceeding in the Supreme Court to deprive the Sterling Electric Motors company's Employees' Association of its right of collective bargaining with respondent, to which we have held the Association is entitled.

The Association had been chosen the bargaining agent of respondent's employees by a majority of the respondent's employees and all three of the participating judges agreed that the Association had been organized without employer aid or interference and that a board's order disestablishing it was not warranted by the evidence. Cf. National Labor Relations Board v. Sterling Electric Motors, Inc., 9 Cir., 109 F.2d 194, 210. The court therefore declined to enforce the Board's orders to respondent to cease and desist: "(b) From recognizing Sterling Electric Motors, Inc., Employees Association as representative of any of its employees for the purpose of dealing with the respondent concerning grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of employment.", and to take affirmative action: "(a) Withdraw all recognition from the Sterling Electric Motors, Inc., Employees Association as a representative of any of its employees for the purpose of dealing with the respondent concerning grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of employment, and completely disestablish said Association as such representative."

Subsequently we set aside the order we had made declining enforcement of the above and other orders of the Board. On a reargument, granted on the petition of the Board, the court construed the intent of Congress in creating the duty of the Board in "protecting" all unions' rights of collective bargaining.[1] It held that the two orders forbidding the employer to

---

[1] National Labor Relations Act, Sec. 1, 29 U.S.C.A. Sec. 151:

"It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection. (July 5, 1935, c. 372, § 1, 49 Stat. 449.)"

bargain collectively with the Association deprived the Association of that protected right, the sole function of the Association. We declined to decree the enforcement of the order because the Association was not a party to the proceeding. ·The Court held the Board, so required by Section 1 of the Act to protect the Association's right of collective bargaining, had violated a civil liberty of the union, in failing to give it notice and an opportunity to be heard in a "protecting" proceeding in which it was sought to deprive the Association of that right. National Labor Relations, Board v. Sterling Electric Motors, 9 Cir., 112 F.2d 63, 65 et seq.; Id., 9 Cir., 109 F.2d 194, 196 to 204. The reasons for making this order *without waiting for the determination of* another issue in the case are later stated.

The Board also sought our enforcing decree on orders concerning solely the respondent employer. These orders by the Board to the respondent are to:

"1. Cease and desist:

"(a) From dominating or interfering with the administration of Sterling Electric Motors, Inc., Employees Association or with the formation or administration of any other labor organization of its employees, and from contributing support to said organization or to any other labor organization of its employees;"

"(c) From in any other manner interfering with, restraining, or coercing its employees in the exercise of their right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."

█ We are in agreement with Judge Healy's statement (109 F.2d 212) that these cease and desist orders (a) and (c) are "calculated to protect the employees, not to overthrow their Association; hence the presence of the latter is in no view a prerequisite to its enforcement."

The crucial finding of fact on which these latter cease and desist orders are based is that a bulletin of respondent attributed to a proposal of the Association the granting of a 40 hour week and time and a half for overtime, whereas the Association had made no such proposal. The judges disagreed on the sufficiency of the evidence to support the finding. The court by a majority held it was not substantial

(cf. 109 F.2d 204 to 208) and made an order denying enforcement of cease and desist orders·(a) and (c). This order also was set aside.

On the reargument on this finding of fraud, claimed to support these latter orders, the Board suggested that under sec. 10(e) of the Act the matter could be returned to the Board for further evidence respecting the charge. All the judges stated they would welcome such action. Respondent filed a motion for such a proceeding with affidavits completely negativing the fraud. Upon these affidavits Judge Healy regarded the case as "threatening to become moot." 112 F.2d 63, 70. However the Board assured us to the contrary and stated that it would take some time to procure certain witnesses, and that after the hearing "the respondent will want to except to the [Board's] decision." 112 F. 2d 63, 69.

This meant a delay of possibly two months in the search for the witnesses, the trial examiner's hearing, the hearing before the Board in Washington, its preparation of its findings and decision and return of the proceeding to this court. The Association was in a contest with a rival union and the Board order denying its right of collective bargaining would aid its rival in its arguments with the workers. In refusing to enforce the Board's order so destroying the Association's right to bargain collectively with respondent, the court stated: "Further to delay with regard to this small self-organized union might amount to an unfair labor practice on the part of this court, for in that period the pressure of the Board's order and of its powerful rival well may persuade the men to give up their self-organization as hopeless, and the protection of Section 1; of the Act a vain delusion." 112 F.2d 63, 69.

The form of the 10(e) order on the recommitted issue of fraud was determined May 6, 1940. It seemed likely that the Board's return would be made in time for the July or August session of the court. *The Ninth Circuit sits every month of the* year and the Circuit Judges individually arrange their vacations to fit the court's monthly sessions. The presiding judge wrote the counsel of both the Board and the respondent for advice concerning the date of the return of the recommitted issue to provide for the presence of the three judges participating in the case, if it was

to be heard in the July or August session.

Both counsel responded and it appears that the Board did not follow its suggestion that it would consume time in a search for witnesses to refute the allegations of the respondent's affidavits. The trial examiner on May 8, 1940, two days after the determination of the form of the recommitment, heard the respondent's evidence in one day and returned it to the Board.

The Board's general counsel advises us (and it appears in the Board's petition for certiorari) that the Board has determined not to consider the evidence transmitted to it and decide promptly the issue as required by §§ 10(e) and 10(i). On the contrary he states the Board will postpone the consideration of the recommitted issue until the Supreme Court has finally decided a certiorari proceeding on the entirely unrelated order denying the Association its right of collective bargaining without notice or hearing. It is thus apparent that the Board's decision and return of the recommitted issue may thus be delayed from May 8th, when the trial examiner closed the hearing, for a long period—that is until some months into the October term of the Supreme Court. Already the Board's attorneys must know whether or not the one day's evidence vindicated the respondent on the charge of fraud.

■ Such a refusal to act on the recommitted issue of fraud is a violation by the Board of its duty under section 10(e) of the Labor Act. It is obvious what the delay of these many months may mean to the business reputation of a small manufacturing firm subject to a charge by a powerful governmental agency of a fraud reflecting on its integrity, allegedly committed to accomplish a violation of a federal statute. It is also obvious how it may advantage the competing national union in its contest with the Association for the membership of the workers. That a prompt decision on such a charge is the intent of Congress is shown by Section 10(i) of the Act. c. f. Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 372, 59 S.Ct. 301, 83 L.Ed. 221; National Labor Relations Board v. American Potash & Chemical Corp., 113 F.2d 232, 236.

It is also obvious that a decision holding respondent committed no fraud may make the case moot[2] and the Board's certiorari proceeding in the Supreme Court fail, while a decision against the employer would not in any way affect the status of that proceeding.

It is also apparent that a reversal of our decree in the certiorari proceeding will not in the slightest way change or affect the statutory obligation of the Board to decide promptly the issue of alleged fraud of the respondent. As stated, the Association is not now a party to that proceeding and it will not become a party if, in the certiorari proceeding, our decree regarding the Association be reversed.

■ Mandate is one method of compelling a proper respect for the obligation of the Board to the court and the respondent on the recommitment and of making effective that purpose of the legislation which requires prompt action on the part of the Board. A more effective method in the instant case is the attached order setting aside the order which the Board seeks to have set aside and which it uses as a reason for its denial to the respondent of its right. c. f. Ford Motor case, supra. This hastens rather than delays the final determination of the proceeding before us which, on the Board's suggestion, at its requested rehearing, was returned to it for its further consideration.

Incidentally, the setting aside of the order relieves the Association from an unfortunate position in which the order has placed it. The counsel for the Board, without our request, were courteous enough to forward copies of its petition for certiorari. More recently, also without our request, we received the answer of the Sterling Company. From the latter it is clear that the certiorari on the question of the civil liberty of the Association, absent from that proceeding, is purely an ex parte case. The employer-respondent declares it is not interested in the result and declares it is not a proper adversary party. Sterling Company's answer states its position under the heading: "There Is No Proper Party Adversary Herein to Defend the Question Raised by the Board; Accordingly Decision Thereon at This Time Must Be Without Benefit of Hearing Both Sides.", as follows: "Since the prejudice suffered and benefits intended are prejudice and benefits to the Employees Association and not to respondent, it fol-

---

[2] 109 F.2d 204 to 208, 212; 112 F.2d 69.

lows that the Employees Association and not respondent is the proper adversary to the Board on the question raised by the instant petition. Respondent can neither afford nor does it feel constrained, pending decision on the merits, to send its counsel to Washington to argue a question not only academic in fact and principle and incapable of proper decision without reference to evidence not now before this court (see Points I, II and III, supra) but likewise one which respondent has no proper interest at this time to argue."

█ This action by the respondent employer is another illustration of the correctness of our construction of the Act, that Congress could not have intended that the protecting of a union's right to collective bargaining should be, left to the employer. We stated: "The Board did not, because it cannot, deny that the employer's interest at the time of the trial often may be quite different from and opposed to that of the absent union. The employer himself then may want to destroy the union, either because he cannot control it, or because a more powerful rival threatens a strike and a picket line. He then may 'ride to a fall' at the hearing, preferring to submit to an order to desist from something already prohibited by the statute, to the pressure of a disliked union he does not control, or to a costly shutdown which may throw him into bankruptcy. The likelihood of such motivation of the employer whose trial the Board claims determines the life of the union is obvious not only to those of us who have had intimate contact with industrial disputes of the recent decades, but to anyone who gives the consideration required here of employer psychology. We cannot believe that Congress ignored it, or rather, would have ignored it if, when the Labor Board bill was under discussion, some Congressman then had had the temerity to propose that the Board should destroy a union [or its sole function of collective bargaining] with-

out notice and an opportunity to be heard." 112 F.2d 63, 66.

The result of our order attempting ·to give the protecting of the right of collective bargaining to the Association required by sec. 1 of the Act is (1) that the Board is unwarrantedly delaying decision of the fraud charge against the respondent with the harmful effects above described, and (2) the Board, in effect ex parte, is seeking in the Supreme Court to destroy the bargaining right of the Association which the Act requires it to protect,—a position into which our order of May 6, 1940, has forced the Association.

██ The effect of the order, now set aside, upon the Association is not consonant with the principles of equity controlling this court in a labor relations case. In acting sua sponte on behalf of the Association—as permitted for any unserved and nonappearing person deprived of a right,[3] here the Congressionally protected right of collective bargaining—we have produced an inequitable result. Such an unfortunate outcome of our action illustrates the danger of any court attempting to adjudicate the right of absent persons. Because of our failure to realize the attitude of the Board, it now appears the order may well be described as "improvidently entered."

However we cannot agree with the suggestion that this case, in which the respondent-employer is denied the statutory right to consideration of the evidence on a charge of fraud reflecting on its integrity, which is "threatening to become moot",[4] and in which we have caused the absent union to be subject to an "ex parte" proceeding affecting its right of collective bargaining, is one which does not "have any practical importance" warranting our action.

Nor can we agree that the opinions giving the reasons for a court's decisions "stand as the official pronouncement of the court" when the decisions are vacated. Nor

3 Cf. 109 F.2d 196, and cases cited; Ford Motor Co. v. National Labor Relations Board, 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221."

4 Nor does there seem warrant for the apprehension, stated in the dissent with such judicial curtesy and restraint, while ignoring and not disapproving the refusal of the Board to act in the recommitted issue, that the federal judicial system, to which is committed the protection of our civil liberties, is endangered by the in-

stant decision. That is to say, if, incidental to our prevention of the Board's delaying of the proceeding by refusing to act on the recommitted issue, the Board loses an opportunity to present, ex parte, its contention that Congress intended or the Supreme Court holds that any union may be deprived of its Congressionally protected right of collective bargaining, without recognizing its civil liberty of a right to notice and an opportunity to be heard. W. D.

that the Board, as litigant in the federal courts, is a "coordinate agency" of the courts. Here, it sues alleging and offering proof of its statutory right to our enforcement of its civil administrative function. It is no more coordinate with the courts, as litigant, than is the United States suing a defendant in criminal cases and seeking our enforcement of its criminal statutes.

HEALY, Circuit Judge (dissenting).

There have been two decrees in this matter, one entered in January last, the second in May. Each denied enforcement of the Board's order.

The first decree was ordered vacated following upon the adverse decision in National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. ——. However, the original opinion of the court (109 F.2d 194) was not withdrawn. The same course is pursued now, the second decree being vacated but not the second opinion. 112 F.2d 63. The opinions stand as the official pronouncement of the court. In them and in the third now handed down the majority continue to elaborate their views with respect to an issue already adversely determined, and which, in any event, in the light of existing Board rules, has long ceased to have any practical importance.

What is the purpose of this novel procedure? If it were the thought to withdraw the decree as improvidently entered and eventually to dispose of the case in harmony with existing decisions of the court of last resort, I would have no objection to the action now taken. But this is far from the aim of my associates. If I correctly read the opinion, a principal object is to forestall review because it is felt that the question of law involved will be presented in the Supreme Court under conditions of which the majority do not approve.

The National Labor Relations Board is a coordinate agency, burdened with heavy responsibilities and answerable, not to us, but to Congress for the spirit in which its responsibilities are discharged. The Board not only has the right, it is its duty to seek in the Supreme Court authoritative interpretations of the law under which it operates. The notion that this court is to exercise a form of censorship of the circumstances under which the Board may seek review of disputed questions, or under which the Supreme Court may determine them, is so fantastic as to defy comment.

The case itself has become submerged. I am reluctantly persuaded that my colleagues have converted it into a mere vehicle for the perpetuation of an argument. By the simple process of the entry and vacation of decrees and the concurrent handing down of opinions I see no reason why the argument may not go on indefinitely, but I fail to see how this judicial filibuster comports with the orderly administration of justice or in what way it facilitates the prompt disposition of the public business involved.

For these reasons, and upon the grounds set forth in previous dissenting opinions (National Labor Relations Board v. Sterling Electric Motors, 9 Cir., 109 F.2d 194, 210; Id., 9 Cir., 112 F.2d 63, 69), I dissent.