NATIONAL LABOR RELATIONS BOARD v. STERLING ELECTRIC MOTORS, Inc.

No. 9209.

Circuit Court of Appeals, Ninth Circuit.

March 14, 1941.

Concurring Opinion March 15, 1941.

Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, and Laurence A. Knapp, Asst. Gen. Counsel, National Labor Relations Board, all of Washington, D. C., for petitioner.

Hardy & Horwin, Leonard Horwin, and Jack W. Hardy, all of Los Angeles, Cal., for respondent.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

PER CURIAM.

On June 19, 1939, the National Labor Relations Board petitioned this court to decree the enforcement of the Board's order of July 9, 1938, requiring respondent, Sterling Electric Motors Inc., to cease and desist from certain practices and to take certain affirmative action. Answering, respondent prayed that the order be set aside. We heard the case and, on January 9, 1940, entered a decree setting the order aside. 9 Cir., 109 F.2d 194.

On March 9, 1940, this decree was set aside and the Board petitioned for and was granted a rehearing. At the rehearing, respondent applied for and, on April 22, 1940, was granted leave to adduce additional evidence, to be taken by the Board. Thereafter, on May 6, 1940, prior to the taking of such additional evidence, we entered a decree setting aside the Board's order in part and, as to the remainder thereof reserving our decision. 9 Cir., 112 F.2d 63.

The Board petitioned the Supreme Court for a writ of certiorari. While that petition was pending we vacated and set aside our decree of May 6, 1940. 9 Cir., 114 F.2d 738. Thereupon the Board filed in the Supreme Court a motion for leave to file a petition for writs of mandamus and prohibition. On October 28, 1940, the motion was denied and the petition for writ of certiorari was dismissed. 311 U.S. —, 61 S.Ct. 67, 85 L.Ed. —, 311 U.S. —, 61 S.Ct. 69, 85 L.Ed. —.

On February 20, 1941, the Board filed in this court additional evidence taken before the Board pursuant to our order of April 22, 1940, new findings thereupon made by the Board, and the Board's recommendation that its order of July 9, 1938 be set aside.

Recommendation accepted and decree entered accordingly.

DENMAN, Circuit Judge, concurring.

My brethren are of the opinion that where such an administrative body as the National Labor Relations Board, upon a further hearing on matters recommitted to it, decides there is no ground to sustain its charges of employer domination of a union or of other unfair labor practices, and asks to have set aside its own orders, including one destroying an absent union's right of collective bargaining, that is an adequate reason for a decree granting its request. I am in agreement with this, but prefer to concur on the additional ground of the lack of jurisdiction in personam over the Association for an order disestablishing it and depriving it of its right of collective bargaining.

As we have stated (9 Cir., 112 F.2d 63, 68) we cannot be blind to the tragedy of the destruction of the democracies of Western Europe nor can we now ignore the fact that we are entering a long period when, in the stress of defense of our own, our citizens will feel constrained to submit voluntarily to an emergency exercise of an administrative absolutism abhorrent in peace time. When that long period is passed, our tribunals exercising such powers will be reluctant to yield them. They will point to their exercise by the Labor Board *before the emergency* and to the Pennsylvania Greyhound case (National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, 271, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307) as authority for their continuance.

Throughout the instant proceeding the Board has insisted that it has such absolute power to destroy a union's right of collective bargaining, though not served or appearing, and that, in cases it has brought, it has fixed such absolute power as part of our widely extending administrative law.[1] Because of this, the following considerations seem pertinent to the Board's contentions.

---

[1] The union in this case happens to be a "self organization" of the company's employes whose protection is declared in paragraphs 1 and 7 of the National Labor Relations Act. 29 U.S.C.A. §§ 151, 157. The principles here discussed as well apply to unserved and nonappearing locals of the A. F. of L. or C. I. O.

In our decision of this week (March 11, 1941) in National Labor Relations Board v. Ferguson, 9 Cir., 118 F.2d 892,[2] we have held that in a proceeding in which the Board is prosecutor, and the employer is the sole respondent, and the labor organization absent, we cannot so destroy the latter's right of collective bargaining. In that decision we rely upon the principles stated in our decisions in this proceeding, National Labor Relations Board v. Sterling Electric Motors, Inc., 9 Cir., 109 F.2d 194; Id., 9 Cir., 112 F.2d 63, 64; Id., 9 Cir., 114 F.2d 738.

Our opinions rest on the thesis that the primary purpose of the act and the primary function of the Board is the protection of the public's interest, as well as the union's, in the latter's right of collective bargaining with its employer. This is clearly established by the language of the declaration of policy with which the National Labor Relations Act opens and in its section 7, 29 U.S.C.A. §§ 151, 157.

It is a logical absurdity to say that ordering an employer not to bargain collectively with a union does not *directly* deprive a union of the right of bargaining with the employer. Without the contemplated *nexus* of employer and the employees' Association in collective bargaining there would be nothing for the Board to protect. To say that because the decree "runs against" the employer, it does not directly affect the Association which Congress sought to protect, is as complete a contradiction in itself as if the King's executioner should say, "I have cut off the condemned's head as ordered, but have not affected his body, which your Royal Highness did not order." Cf. our opinion in 112 F.2d 63, 65, for an extension of this discussion.

It is obvious Congress did not intend that the protection of the public's interest in a union's right of collective bargaining should be in a proceeding in which the Board is both prosecutor and judge and *no adversary party at all appears,* and where the Board contends that the union is employer dominated and hence cannot exercise that right.

It is equally obvious that the union's *submission to or participating in employer dominion* is an essential part of the evil sought to be prevented by § 7 and 8 of the Labor Act, 29 U.S.C.A. §§ 157, 158. No mat-ter what discriminating benefits the employer may have given it, a union well could prove to the Board that it was independent and not dominated by the employer, and hence should not be destroyed or denied its right to bargain collectively.

. *A labor union may engage in and be prevented by the Labor Board from further engaging in an unfair labor practice.* It should be noted that section 10(a), (b) and (c) of the Labor Relations Act, 29 U.S. C.A. § 160(a–c), empowering the board to prevent unfair labor practices does not mention the word "employer", but significantly uses the word "person."

Also it should be noted that Congress gives the Board no specific power to disestablish a union. This is the judge made law of the Pennsylvania-Greyhound case, framed there without the participancy of any union representative in establishing principles governing disestablishing procedure for the great numbers of unions then or later to be charged with submission to employer dominion. Had there been such counsel for the union sought to be destroyed (as here) by an order disestablishing it and by depriving it of its right of collective bargaining, he well could have called the Supreme Court's attention to the following considerations.

It is a matter of indifference whether a union is a person or a number of persons associated for a common purpose. A union submitting to or participating in employer dominion is a "person", within section 8(1) of the National Labor Relations Act, who thereby "interferes with" and "restrains" and, through its union power, "coerces" "employees" of the company—its members —in the exercise of their rights "to bargain collectively through representatives of *their own* choosing," guaranteed by section 7.

Hence a labor union accused of such submission to dominion or participating in it, is a "person" which the Board is empowered under section 10 (a) of the Act to prevent from engaging in such unfair labor practice by the procedure against "any person" so offending provided in section 10 (b) and (c) of the Act. As shown, the union is necessarily tied to and is "engaging" with the employer in the commission of the offense and hence a necessary party to the proceeding by which it is to be prevented, if actually participating or submitting, from dealing with its employer.

---

[2] By Judges Denman and Mathews, Judge Healy concurring only in the result.

896

Similarly a labor union engages in an unfair labor practice if, when in a jurisdictional struggle with another union, it uses violence to coerce the other from becoming the employees' collective bargaining agent.[3] Surely the Board has power under § 10 (a), (b) and (c) to prevent any "person" whether unionized men or employers from so coercing employees in the exercise of their right to "bargain collectively through representatives of their own choosing" as guaranteed by § 7. Where such disruption of the industry occurs both the employer and the coerced union is entitled to seek the Board's protection.

It is apparent from an elementary knowledge of the employer-union relation that the employer is not the person intended by Congress to protect the public's interest (or the union's) in the union's right to bargain with its employer. As we have pointed out (112 F.2d 63, 66) the employer, because he may not dominate the union or because a more powerful union threatens a picketing, with consequent bankruptcy to the employer, may "ride to a fall" in the Board proceeding and willingly be ordered to cease and desist from not doing that which, in any event, the statute prohibits.

In fact without any hearing at all, the employer may stipulate to orders destroying the union's right of collective bargaining and in a case like this, where such bargaining is the only function of the Association (109 F.2d 194, 202), to the destruction of the union itself. Cf. Pittsburg Plate Glass Co. v. National Labor Relations Board, 8 Cir., 113 F.2d 698.

Adding to these general and obvious considerations, the action in this particular case of the Board and the employer, the only participants, conclusively shows that Congress could not have intended that on the trial of the issue, the public interest in the Association's right of collective bargaining is to be protected by either. On the contrary, it shows that the absence of the Association has led to Board orders which, if enforced, wrongfully would destroy the very right Congress sought to protect.

That the public interest in the Association's right may receive no protection at all from the employer is apparent from the action of the Sterling Electric Motors, Inc., in the certiorari proceeding brought by the Board against that company for a reversal of our holding that the Board's orders denying the Association its right of collective bargaining could not be enforced in the absence of service on it or its appearance. National Labor Relations Board v. Sterling Electric Motors, Inc., 311 U.S. ——, 61 S.Ct. 69, 85 L.Ed. ——, decided October 28, 1940. Instead of arguing to protect the public's (or the Association's) interest, the company refused to defend that interest because the proceeding was "one which [it] has no proper interest at this time to argue" and one in which the "Association and not respondent is the proper adversary to the Board." Cf. 114 F.2d 738, 741, 742.

We thus see that the employer, instead of defending the public's interest in the right commanded to be protected, but sought by the Board to be destroyed, from his own desire to destroy the union or fear of a more powerful one, may seek *in the proceeding itself* to destroy it, or, as here, may refuse to do anything in its protection.

Concerning the absence of the Association in this case as leading to the Board's order destroying the Association's right of collective bargaining and thereby subverting the public's interest in its protection, it appears that the only substantial fact found by the Board as supporting that order was an allegedly false and fraudulent notice published by the employer on its bulletin board where it could be read by the employees.

The notice was a granting of a 40-hour week and time and a half for overtime—a demand for several years theretofore made and generally granted throughout industry in the Pacific States. The alleged falsity consisted in the bulletin's statement that the proposition for the 40-hour week and overtime "was submitted to the company by the committee representing your organization," the Association, whereas it had not been submitted by it at all, but was a voluntary beneficence of Sterling, aimed to favor the Association in its struggle with a rival A. F. of L. union.

There had been a meeting between the Association's committee of three and Sterling's president, general manager and superintendent on June 7, 1937, at which

3 Cf. Milk Wagon Drivers Union v. Meadowmoor Dairies, Inc., 61 S.Ct. 552, 85 L.Ed. ——, decided February 10, 1941.

meeting the proposal had not been made by the committee. The bulletin was posted on June 14. There was testimony that the committee had not had a second meeting with the management until long after June 14, and the Board, as then constituted, found that because the committee had had no meeting with the management there could have been no such proposal made to it, and hence the fraud proved.

We have considered the testimony at the first hearing in detail in our opinion in 109 F.2d 202 to 209. We there pointed out that, had the Association been a party, its attorney would have questioned directly whether the committee had made such a proposal without a meeting with the management, but through one of its members or by writing or telephoning. It is difficult to conceive that the *Association's* counsel, preparing his client's case among the members of the committee and the Association, would have failed to discover such a direct making of the proposal otherwise than by a meeting.

After thus suggesting the questions which would have been asked if the Association had been a party, the case was recommitted to the Board. The Board heard or accepted the evidence of many *employee*-witnesses, all uncontradicted, who were not summoned at the first hearing. (Return of recommitted issue, p. 112). The questions were asked that we had suggested an Association's attorney would put. It then appeared that, though there was no meeting between the committee and the management between June 7 and 14, there had been a communication from the committee to the management submitting the proposal through one of its committeemen, and the Board now so has found.

That is to say, the whole prosecution of the Association was unjustly founded, the newly constituted Board finding that the Sterling Company did not initiate, interfere with or dominate the Association, or commit any unfair labor practice and stating to us "We therefore recommend to the Circuit Court that the Board's order of July 9, 1938, be set aside." Had the Association's civil liberty not been denied, it is my opinion that there would not have been this two and a half years of litigation.

We have commented on the natural tendency of administrative bodies to grasp for power beyond their right, to ease the heavy burden of adjudicating, particularly where, as here, is required a new and necessary system of regimentation of our increasingly complex civilization. That grasp for power is clearly illustrated here. In our opinion (109 F.2d 200), we held that, assuming the power to destroy the union without service or appearance, it was an abuse of that power in this case not to have made service and permitted the union to defend its right in which the public has such an interest.

After this holding that the Board had abused its discretion, we granted it a re-argument. Before then, the Board had promulgated a rule requiring such service in all such cases (Rules of the Board, Section 5, Article II)—that is to say, the Board would have had no discretion at all but must have served the Association, if the proceeding had been later commenced. Yet, the Board, as then constituted, made no offer to have the case recommitted to it for the purpose of making the Association a party. Such a recommitment and service would have disposed of the question of the denied civil liberty. By the Board's failure, its intent became clearly apparent to rivet into our administrative law this denial of the right of notice and opportunity to be heard. The duty of the federal courts in such a situation we have discussed in our succeeding opinion, 112 F.2d 68.

The Board's intent became the more insistently apparent when we set aside our second decree denying enforcement of the Board's order, upon which decree the Board then had pending in the Supreme Court the proceeding for certiorari, heretofore described, in which the Board sought, ex parte, the denial of the Association's right to service and hearing. 114 F.2d 740, 741. The Board, as then constituted, filed in the Supreme Court a theretofore unheard of motion for leave to petition for a mandamus to this court to restore our decree which the Board claimed was erroneous, and for a prohibition against our again setting it aside! The motion was denied. 311 U.S. ——, 61 S. Ct. 67, 85 L.Ed. 67.

At the time this extraordinary motion was made, the Board had declined for four months to consider the evidence, taken in one day, on the recommitted issue. It thus kept this proceeding pending to support the ex parte certiorari proceeding. From that evidence, ignored by the

Board for all these months, it now appears from the Board's decision that the ex parte certiorari was pressed and the motion for mandamus and prohibition was made in a case where there was no ground for any action whatsoever by the Board,— that is, in a case obviously about "to become moot." Cf. our opinion 114 F.2d 738, 740–743.

Our view of the case of National Labor Relations Board v. Pennsylvania Greyhound Lines, 303 U.S. 261, 271, 58 S.Ct. 571, 82 L.Ed. 831, 115 A.L.R. 307, and its overruling by the "fair play" doctrine of Morgan v. United States, 304 U.S. 1, 22, 58 S.Ct. 773, 999, 82 L.Ed. 1129, is stated in 109 F.2d 199, 200, and our view of the holding in National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, 356, 366, 60 S.Ct. 569, 84 L.Ed. 799, appears in 112 F.2d 63, 68, 69.

The National Licorice case holds the court has the power, in the public interest, to declare invalid *a contract,* invalid on its face. The cases relied upon interpret statutes not primarily concerned with "protecting" contracts. Here the statute is primarily concerned with "protecting" a union's right of collective bargaining. If the National Licorice case is to be deemed to hold that, in protecting the public's and the union's interest in its right of collective bargaining, the right may be destroyed in a proceeding ex parte the union, I deem it not stare decisis, because the holding is by a court not having before it a representative of the person whose right is destroyed. In this I accept Webster's commonplace definition of that term: "stare decisis * * * Literally to stand by decided matters;—used as short for stare decisis et non quieta movere (to stand by decisions and not to disturb settled matters) as implying the doctrine or policy of following rules or principles laid down in previous judicial decisions *unless they contravene the ordinary principles of justice. * * *.*" (Emphasis supplied).

These decisions clearly evidence the wrong of deciding that a union itself or its right of collective bargaining may be destroyed without notice or appearance. Not one of the considerations detailed above concerning the impropriety of leaving *to the employer* the protection of the public's interest in the union's right is mentioned, much less discussed, in any of the opinions relied upon by the Board.

It seems clear that such employers as those in the Pennsylvania Greyhound, the National Licorice and other cases, would be most unlikely to present such argument against the employing class, or any part of it. On the other hand, it is inconceivable that if vigorous counsel for the unions (or detached advocates for the Board seeking to distinguish them) had presented to the Supreme Court the considerations here discussed, that court would have done the unions the judicial injustice of ignoring them in its opinions. They could not have been pressed on the court's attention.

In such a situation, it is submitted, no judge trained in the Anglo-American system of justice is required to accept these decisions as stare decisis. This court, in effect, so has held in its recent decision in National Labor Relations Board v. Ferguson, supra.