## WAYSIDE PRESS, Inc. et al. v. NATIONAL LABOR RELATIONS BOARD.
### No. 13789.

United States Court of Appeals
Ninth Circuit.
Aug. 25, 1953.

Gibson, Dunn & Crutcher, Ira C. Powers, Jerome C. Byrne and James J. Ryan, Los Angeles, Cal., for petitioners.

George J. Bott, Gen. Counsel, David P. Findling, Asst. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Norton J. Come, Melvin Pollack, Attys., National Labor Relations Board, Washington, D. C., for respondent.

Before DENMAN, Chief Judge, and MATHEWS and ORR, Circuit Judges.

DENMAN, Chief Judge.

This is a petition to review and to set aside an order of the National Labor Relations Board, hereafter the Board, pursuant to Section 10(f) of the Labor Management Relations Act, 29 U.S.C.A. § 151 et seq., hereafter the Act, and a cross petition by the Board to enforce the order.

**(A)  Jurisdiction of the Board.**

[1] Wayside Press, Inc., is a California corporation conducting a printing business in Los Angeles, California. A complaint against it was filed with the Board by Pressmen's Union, No. 78, an international union, seeking to organize Wayside's employees. While not directly engaged in interstate commerce, Wayside supplies goods and services of a value in excess of $50,-000 per annum to firms which realize annual income in excess of $25,000 from sources outside the State of California. From this it is clear that the Board had jurisdiction to entertain and consider the Pressmen's Union No. 78's complaint. See Hollow Tree Lumber Co., 91 N.L.R.B. 635, 636. The question here is whether the evidence sustains the Board's burden of proof of a violation of the Taft Hartley Act.

**(B)  Finding of Restraint and Coercion.**

■ The trial examiner, in a finding that was approved by the Board, ruled that in using an application blank for employment containing the question, "Are you a member of Union ............ If so, which one," Wayside had violated Section 8(a)(1) of the Act. The only evidence in support of this finding was the application blank itself. Immediately upon being informed that the Board objected to the inclusion of the question in its form, Wayside abandoned the use of it.

There was no evidence of any background of union hostility on the part of Wayside, nor was any showing made, by credible evidence, that any attempt had been made to use the information so garnered to restrain or coerce employees in the exercise of their rights under the Act. Thus, the case is squarely within the following statement from Sax v. N. L. R. B., 7 Cir., 171 F.2d 769, 773 "Mere words of interrogation or perfunctory remarks not threatening or intimidating in themselves made by an employer with no anti-union background and not associated as a part of a pattern or course of conduct hostile to unionism or as part of espionage upon employees cannot, standing naked and alone, support a finding of a violation of Section 8(1)." See also N. L. R. B. v. Ozark Dam Constructors, 8 Cir., 190 F.2d 222, 227–228; N. L. R. B. v. Montgomery Ward & Co., 2 Cir., 192 F.2d 160, 163; Opelika Textile Mills, Inc., 81 N.L.R.B. 594, 595. The cases cited by the Board are all cases in which there was evidence of many forms of restraint or coercion in addition to the evidence that such a question was put to the employees, either in a questionnaire or orally. No case has been found in which it was held that the mere asking of the question was violative of the Act where, as here, the only evidence was that a question about union affiliation had been asked. Absent any further showing of restraint or coercion the finding of the Board is unwarranted and should be set aside.

**(C)  The "Domination" by Wayside of the Independent Union.**

■ The Wayside Press Employees' Independent Union, Inc., hereafter the Independent Union, was organized in 1938 but became inactive in 1942. About 1949, employee Irons started an employees' association for the purpose of paying sick benefits. On September 6, 1951, representatives

of the Pressmen's Union, No. 78, an affiliate of the International Printing and Assistants Union, passed out circulars in front of the Wayside plant concerning its forming a union there. That international union required the company's foreman employees to become members of the union.

The following day employee Irons decided to reactivate the Independent Union with the foreman employees to be members. Before doing so he asked the opinion of Foreman Stevens, who worked as a mechanic 75 to 80% of the time and who was a member of the union. Stevens answered, according to Irons, "he thought it would be a little bit in our favor if we did have it that way." In saying "our favor" Stevens well could have meant the foremen who would become members. In any event, it is no violation of the Act that the employees knew that the employer preferred an independent union, or that Foreman Stevens preferred to be a member of it.

Irons then asked Bailey, a foreman who also was employed as such a mechanic, to set the type for the ballots. When he had done so, Irons ran them off on the company press. No work order was made out as for ordinary business and no other permission to use the company's equipment was received. Irons then gave the ballots to the delegates of the association to be passed out to the employees and to be collected when completed. It is no violation of the Act for such printing and distribution, where the employees themselves seek to form such a union. It merely aided the employees in determining whether they desired it.

On September 10, 1951, a meeting of employees was held, on company time, at the end of the lunch period. The minutes show that the meeting lasted about thirty minutes. A count of the ballots was taken and showed 39 votes for and 13 against reactivating the Independent Union. The employees' desire to reactivate the Independent Union was based on their opposition to the International which was seeking to organize the plant. They objected to "outsiders" being employed with them. Acting on such a purpose is no violation of the

Act because the employer might agree with them.

After the ballots had been counted, Stevens addressed the meeting on the desirability of reactivating the Independent in order to keep outsiders from the plant and later nominated Irons as president and Crowder as vice-president. Both were elected. Other officers of the association were carried over until the end of the year.

At the time of the meeting, Woods, Wayside's general superintendent, was out to lunch, but he was informed of it the same day. No deductions from pay were made for attendance at this meeting. There was testimony that commonly no pay deductions were made for employees who overstayed their lunch periods.

There were also findings that foremen Stevens, Bailey, and Schubert, who worked as mechanics 75 to 80% of their time, were "supervisory employees" within the meaning of the Act. For the purposes of the following discussion it will be assumed that such is the case.

On the basis of the above findings of fact, the Board concluded:

"* * * that by the activities of Stevens, Bailey and Schubert in the preparation of the ballots and the distribution thereof, and by their participation in the meeting of September 10 and the reactivation of the Independent, the Respondent has dominated the Independent and interfered with its formation."

Wayside was ordered to cease and desist from "Recognizing Wayside Press Employees' Independent Union, Inc., or any successor thereto as the representative of its employees for the purpose of dealing with the Respondent concerning grievances, labor disputes, wages, rates of pay, hours of employment, or other conditions of employment."

We think that the evidence adduced fails to support the Board's finding. There is no showing of any "record of hostility toward the outside union * * * or of active solicitation by supervisors, or some other pointed indication of the employer's

antiunion sentiment" such as can be found in other cases where disestablishment orders which are based upon acts of supervisory officials have been enforced. N. L. R. B. v. Brown Co., 1 Cir., 160 F.2d 449, 456, and cases cited.

Most of the evidence by which the Board seeks to tie Wayside to the formation and administration of the Independent Union is based upon the acts of foremen. It must be borne in mind that acts of such minor supervisory employees must be considered in their setting. N. L. R. B. v. Link-Belt Co., 311 U.S. 584, 599, 61 S.Ct. 358, 85 L.Ed. 368. Here the foremen were union members who spent no more than 20 to 25% of their time in a supervisory capacity. Wayside is a small plant, employing some sixty persons. To attempt, as the Board has done, to apply the same standards to such a plant as are applied to plants employing hundreds of persons with full-time supervisory employees is to ignore reality.

■ Since the employer's affirmative urging of the employees to exercise their rights under the Act to organize an independent union is not a violation of the Act, N. L. R. B. v. Hollywood-Maxwell Co., 9 Cir., 126 F.2d 815, 824, mere acquiescence or approval cannot be said to constitute a violation. Acquiescence or approval are not what the Act contemplates when it uses strong words such as "interfere," "restrain," "coerce," and "dominate" in Section 8(a) (1) and (2). N. L. R. B. v. Swank Products, 3 Cir., 108 F.2d 872.

■ As seen, save for the printing of the ballots to enable the employees to determine their desire for a union organization and Stevens' statement that such a union would be in favor of foremen members, all the acts of these minor foremen members of the union came after the other employees had voted for the union. The act of Bailey in setting the type for the ballots without the customary work order and the fact that no one was docked for holding the meeting in the plant on company time do not constitute violations of the Act. As was said in N. L. R. B. v. Brown Co., 1 Cir.,

160 F.2d 449, 454: "* * *· no ultimate finding of an unfair labor practice can properly be predicated upon the subsidiary finding that the respondent permitted the (Independent Union) to organize in its plant, on its time, and with the aid of its telephone and other facilities. The reason for this is that there is no evidence that the (outside) Union requested and was denied similar privileges".

This leaves only the fact that the foremen attended the union meeting and that after it was formed Foreman Stevens nominated the first officers of the Independent Union. All of the foremen, as working foremen, were members or eligible for union membership, as with the Pressmen's Union also seeking to organize the plant. In attending the meeting, and in nominating the officers to run the Independent Union, the foremen were only exercising their rights as union members.

■■ Nor can it be said that the cumulative effect of this evidence is sufficient to show domination or interference. All of this evidence taken together does not constitute "substantial evidence on the record considered as a whole" such as must exist under Section 10(e) of the Taft Hartley Act if the findings of the Board are to be given effect. The burden of proof is on the Board. Evidence yielding the above inferences does not sustain that burden. It was not the purpose of the Wagner Act and is not that of the Taft Hartley Act to encourage hostility between employer and employee. Nor were they designed to aid international unions in their conflicts with independent unions. Cf. N. L. R. B. v. Sterling Electric Motors, 9 Cir., 109 F.2d 194; Id., 9 Cir., 114 F.2d 738. Here the facts disclose exactly the relationship between the employer and employee which businessmen and workers should seek, the workers organized for the protection of their rights and still on a friendly contact with their employer.

Wayside's petition to set aside the Board's orders is ordered granted. The Board's petition for enforcement is denied.