NATIONAL LABOR RELATIONS BOARD
v. OZARK DAM CONSTRUC-
TORS et al.

No. 14283.

United States Court of Appeals,
Eighth Circuit.

July 5, 1951.

Rehearing Denied July 30, 1951.

---

Owsley Vose, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Marshall J. Seidman, Atty., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Ben H. Powell, Jr., Austin, Tex. (A. J. Wirtz, William A. Brown and Powell, Wirtz & Rauhut, Austin, Tex., on the brief), for respondents.

Before SANBORN, WOODROUGH and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The National Labor Relations Board has petitioned this Court for the enforcement of its order of October 13, 1949, (86 N.L.R.B. 520) requiring the respondents to refrain from interfering with the rights of their employees in violation of Section 8(a) (1) of the National Labor Relations Act, 49 Stat. 449, as amended by the Labor Management Relations Act of 1947, 61 Stat. 136, 29 U.S.C.A. § 151 et seq. The order also requires the respondent Ozark Dam Constructors (hereafter referred to as Ozark) to bargain collectively with Fort Smith, Little Rock, and Springfield Joint Council, A. F. L. (hereafter referred to as the Union), as the exclusive representative of certain of Ozark's employees. The order is in conventional form and is based upon findings that both of the respondents had violated Section 8(a) (1) of the Act and that Ozark had violated Section 8(a) (5) in refusing to bargain with the Union.

The respondents resist the enforcement of the Board's order upon the ground that the Board had no jurisdiction to enter it. In addition, Flippin Materials Company (which will be referred to as Flippin) asserts that there is no adequate evidentiary basis for the finding that it interfered with the rights of its employees.

Ozark is a joint venture composed of a group of contractors, and is engaged, under a contract with the War Department, in the construction of a large Government dam in Arkansas. Flippin is also a joint venture consisting of the same group of contractors. It operates only in Arkansas, and furnishes, under Government contract, to Ozark, at or near the dam site, the aggregate or crushed rock necessary for the construction of the dam. From the inception of this controversy, the respondents have contended that their labor relations are not within the Board's jurisdiction because the respondents are not engaged in interstate commerce or the production of goods for commerce and the relations between them and their employees do not and cannot affect interstate commerce in such a substantial or direct way as constitutionally to bring this controversy within the jurisdiction of the Board.

The question of the Board's jurisdiction of this case first arose in March, 1948, in connection with a petition of the Union for certification of a representative of the employees of Ozark for purposes of collective bargaining. Ozark moved to dismiss the

petition on the ground that there was no showing that a question of representation affecting commerce existed. A hearing upon the petition was held at Little Rock, Arkansas, in April, 1948, before a hearing officer of the Board. Upon the record made at the hearing, the Board made the following findings and decision relative to the question of its jurisdiction of the representation proceeding:

"Ozark Dam Constructors of Houston, Texas, is a joint venture organized to build Bull Shoals Dam and works appurtenant thereto on the White River Watershed in Marion and Baxter Counties, Arkansas. * * * The total contract price of this project is $22,146,444. The total cost of the dam, including materials furnished by the United States Government, will be $37,-000,000.

"At the time of the hearing, Ozark Dam Constructors, hereinafter called the Employer, had purchased materials and services in the amount of $3,247,471.21, of which $1,966,912.17 had been purchased outside the State of Arkansas. It had placed further orders having a total value of $3,242,514.07, of which orders valued at $3,154,904.81 were placed outside the State of Arkansas. The Employer was not prepared to estimate the total value of materials which will go into the dam, but the United States Engineers estimate the total to be $19,410,640, of which $9,929,603 will come from outside the State of Arkansas. The Government will furnish materials worth $16,348,700, of which materials with an estimated value of $6,901,700 will come from without the State of Arkansas.

"The dam is part of a flood control and electrical power development project of the War Department. The cost of the entire project is estimated at over $69,000,000. Under existing law the Secretary of War must deliver all electricity not required to operate the project to the Secretary of the Interior, who is required to transmit and dispose of the same in such manner as to encourage the most widespread use thereof at the lowest possible rates to consumers consistent with sound business principles. At the time of the hearing no contracts had as yet been let to dispose of this power.

"Despite the great value and amount of interstate shipments necessitated by the construction of the dam, the Employer claims that it is not engaged in interstate commerce within the meaning of the National Labor Relations Act, basing its contention on the fact that the Board has in the past refused to exercise jurisdiction in construction cases. Aside from the fact that construction of a dam for purposes of flood control and generation of electrical power has a greater impact upon commerce than construction of buildings, we have repeatedly stated that our jurisdiction extends over construction projects if their interruption would affect interstate commerce, and that our abstention from exercising our jurisdiction in construction cases was a matter of administrative choice and not of legal necessity. The law gives us jurisdiction in all situations where stoppage of production due to a labor dispute would affect interstate commerce. It has been held immaterial whether this stoppage occurs at the beginning or the end of the interstate shipment of goods in commerce. Inasmuch as stoppage of work on the Bull Shoals Dam would [effect] shipments of several million dollars' worth of materials into the State of Arkansas from other States, and would delay the production of electricity which will probably · be sold in interstate commerce, we find, contrary to the contentions of the Employer, that it is engaged in commerce within the meaning of the National Labor Relations Act, and that the purposes of the Act will best be served if we assume jurisdiction in this case. The Employer's motion to dismiss the petition on jurisdictional grounds, made at the hearing and referred by the hearing officer to the Board, is therefore denied."

Thereafter the Union, which had been certified by the Board as the bargaining representative of certain of the employees of Ozark, filed a charge against Ozark alleging violations of Section 8(a) of the Act. This was followed by a first amended charge, and then by a second amended charge, in which, for the first time, Flippin was joined and accused of having violated Section 8(a) (1). Upon these charges, the

Board in January, 1949, issued its complaint against both Ozark and Flippin.

The complaint alleged that the joint venturers constituting Ozark "do business as the Flippin Materials Co. only to assist and facilitate the construction of the Bull Shoals Dam * * *." The respondents are then referred to as "joint respondent," apparently upon the theory that they were not separate legal entities. In their answer to the complaint of the Board, the respondents alleged:

"The National Labor Relations Board is without jurisdiction in the premises because

"(1) No question of representation affecting commerce, within the meaning of the Act, exists, in that the Respondent Ozark Dam Constructors is engaged in original construction of a new facility located wholly within the State of Arkansas, which has never been used or engaged in commerce; none of its activities affect commerce; and if such activities should lead to strikes or other forms of industrial strife or unrest, such would not result in interference with the normal flow of commerce, nor would the same have the intent or necessary effect of burdening or obstructing commerce in any of the methods set out in the Labor Management Relations Act, 1947.

"(2) The Respondent Flippin Materials Co. is engaged solely in processing native rock for use as agricultural limestone and in local construction of a new facility located wholly within the State of Arkansas, all of its activities being carried on within the State of Arkansas, and none of its materials being shipped, transported or used without the State of Arkansas, and if any of the alleged unfair labor practices should lead to strikes or other forms of industrial strife or unrest, such would not result in interference with the normal flow of commerce, nor would the same have the intent or necessary effect of burdening or obstructing commerce in any of the methods set out in the Labor Management Relations Act, 1947."

The respondents also denied the commission of any unfair labor practice.

The question of the Board's jurisdiction is the vital question in this case. Ozark, under Government contract, is building a dam in Arkansas. Flippin, under Government contract, is supplying crushed rock obtained in Arkansas essential for the construction of the dam. It is safe to say that, since the construction of the dam is confined to Arkansas, neither of the respondents is engaged in interstate commerce or in the production of goods for commerce. See Spencer v. Porter, 8 Cir., 174 F.2d 731 and cases cited.

The jurisdiction of the Board, however, is not confined to the labor disputes of an employer who is engaged in interstate commerce or in the production of goods for such commerce. Section 10(a) of the Act, 29 U.S.C.A. § 160(a), gives to the Board the power "to prevent any person from engaging in any unfair labor practice * * affecting commerce." Section 2(7) of the Act, 29 U.S.C.A. § 152(7), provides: "The term 'affecting commerce' means in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce."

In National Labor Relations Board v. Fainblatt, 306 U.S. 601, 607, 59 S. Ct. 668, 672, 83 L.Ed. 1014, the Supreme Court said: "The Act on its face thus evidences the intention of Congress to exercise whatever power is constitutionally given to it to regulate commerce by the adoption of measures for the prevention or control of certain specified acts—unfair labor practices—which provoke or tend to provoke strikes or labor disturbances affecting interstate commerce."

The Court also said at page 608, 59 S.Ct. at page 672: " * * * the test of the Board's jurisdiction is not the volume of the interstate commerce which may be affected, but the existence of a relationship of the employer and his employees to the commerce such that, to paraphrase § 10(a) in the light of constitutional limitations, unfair labor practices have led or tended to lead 'to a labor dispute burdening or obstructing commerce' ".

Again, in Polish National Alliance v. National Labor Relations Board,

322 U.S. 643, at pages 647–648, 64 S.Ct. 1196, 1198, 88 L.Ed. 1509, the Supreme Court said: "By that Act [Wagner Act], Congress in order to protect interstate commerce from adverse effects of labor disputes has undertaken to regulate all conduct having such consequences that constitutionally it can regulate. * * * And so in this Act, unlike some federal regulatory measures, * * * Congress has explicitly regulated not merely transactions or goods in interstate commerce but activities which in isolation might be deemed to be merely local but in the interlacings of business across state lines adversely affect such commerce. By the Wagner Act, Congress gave the Board authority to prevent practices 'tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce.' § 2(7) of the National Labor Relations Act (49 Stat. 449, 450, 29 U.S.C. § 152(7)), 29 U.S.C.A. § 152(7). Congress therefore left it to the Board to ascertain whether proscribed practices would in particular situations adversely affect commerce when judged by the full reach of the constitutional power of Congress. Whether or no practices may be deemed by Congress to affect interstate commerce is not to be determined by confining judgment to the quantitative effect of the activities immediately before the Board. Appropriate for judgment is the fact that the immediate situation is representative of many others throughout the country, the total incidence of which if left unchecked may well become far-reaching in its harm to commerce. National Labor Relations Board v. Fainblatt, supra, 306 U.S. [601] at pages 607, 608, 59 S.Ct. [668], at page 672, 83 L.Ed. 1014."

■ It is apparent from what has been said that the Board has and retains all the power which Congress could constitutionally give it to deal with unfair labor practices burdening or obstructing, or tending to burden or obstruct, commerce or the free flow of commerce, and that, within constitutional limits, the determination of the question whether unfair labor practices in an industry or undertaking will burden or obstruct, or tend to burden or obstruct,

commerce, is a question for the Board and not for the courts.

■ This case does not differ in principle from the Fainblatt case and other cases upholding the Board's jurisdiction of unfair labor practices in a local industry, which the Board found would affect interstate commerce. See Clover Fork Coal Co. v. National Labor Relations Board, 6 Cir., 97 F.2d 331; Newport News Shipbuilding & Dry Dock Co. v. National Labor Relations Board, 4 Cir., 101 F.2d 841, 843, affirmed 308 U.S. 241; National Labor Relations Board v. Crowe Coal Co., 8 Cir., 104 F.2d 633, certiorari denied 308 U.S. 584, 60 S.Ct. 107, 84 L.Ed. 489. The opinions of the Supreme Court in National Labor Relations Board v. Denver Building and Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, and International Brotherhood of Electrical Workers Local 501, A. F. of L. v. National Labor Relations Board, 341 U.S. 694, 71 S.Ct. 954, delivered after the instant case was submitted, have, we think, dispelled any possible doubts of the Board's jurisdiction in this case.

■ It is our opinion, however, that the Board's finding that Flippin was guilty of unfair labor practices is based upon too meager an evidential base. It appears that a supervisory employee of Ozark who was also an employee of Flippin made threatening remarks to the employees of Ozark for the purpose of influencing their votes at the election ordered by the Board to determine their choice of a bargaining representative. The election in no way involved the employees of Flippin. There is no evidence from which it may reasonably be inferred that the supervisory employee who made the objectionable statements was speaking for or on behalf of Flippin or that the remarks were heard by or conveyed to its employees or in any way affected them or their rights.

■ The only other evidence of any unfair labor practice on the part of Flippin is that it had, shortly before the hearing by the trial examiner, used a form of employment application blank calling, among other things, for the "trade, professional, fraternal, etc." organizations to which an appli-

cant belonged. There is no evidence that applicants for employment were required to state their union affiliations in order to secure employment or that the form contemplated or resulted in the disclosure of any information that Flippin was not entitled to have. The mere existence, at some time not definitely disclosed, of such an application blank, without any showing of the manner of its use or abuse is not, we think, enough to justify a conclusion that Flippin was thereby interfering with the rights of its employees.

The petition of the Board for the enforcement of its order as against Ozark Dam Constructors is granted. Enforcement of the order as against Flippin Materials Company is denied.