AMERICAN FEDERATION OF GRAIN MILLERS, A. F. OF L., v. NATIONAL LABOR RELATIONS BOARD.

No. 13974.

United States Court of Appeals
Fifth Circuit.

June 12, 1952.

L. N. D. Wells, Dallas, Tex., for appellant.

Frederick U. Reel, Attorney, National Labor Relations Board, A. Norman Somers, Assistant General Counsel, David P. Findling, Associate General Counsel, Washington, D. C., for appellee.

Before HUTCHESON, Chief Judge, and RUSSELL and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

Filed by the charging union, on whose amended charge the Regional Director had filed a complaint against Greenville Cotton Oil Company, Employer, the petition for review seeks to vacate and set aside the order [1] of the Board dismissing the complaint insofar as it alleges that the respondent violated Sec. 8(a) (3) and (5) of the Act, 29 U.S.C.A. § 158(a) (3, 5), and that it violated 8(a) (1) before June 18, 1948.

In its brief, petitioner states the question for decision [2] here and summarizes "The Proceedings Before the Board".[3]

Referring to the examiner's detailed and lengthy findings in support of its contention, petitioner insists that the things found to have been done on the dates set out

---

1. 92 N.L.R.B. 1073.

2. The sole questions presented are questions of law as to the applicability and effect of the proviso to Section 10(b) of the amended Act, 29 U.S.C.A. § 160(b), which reads:

"* * * Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made * * *."

3. "The Proceedings Before the Board.

"Following the usual proceedings under Sec. 10 of the Act, the Trial Examiner issued his Report finding, that Employer had discriminated against 36 employees thereby violating Section 8(a) (3) of the Act, had refused to bargain with the Union in violation of 8(a) (5) of the Act, and had committed acts of interference, restraint and coercion violative of Section 8(a) (1) of the Act.

"The Board, on reviewing the Examiner's Report, did not in anywise question the adequacy of the evidence to support the Examiner's findings of fact or conclusions of law. Nevertheless, the Board dismissed the allegations of discrimination against employees and refusal to bargain on the theory that the six month period of limitations in Section 10(b) of the Act, quoted above, 'protected (employer) from liability with respect to the alleged violations of Section 8(a) (3) and (5).' Accordingly, the Board dismissed the 8(a) (3) and (5) allegations. On this proceeding to review the action of the Board, petitioner labor union, a party aggrieved by the Order of the Board within the meaning of Section 10 (f) of the Statute, asserts that the Board erred in the dismissal of those portions of the complaint."

therein support the examiner's conclusion that unfair labor practices occurred and that the six months' cut off period fixed in the proviso is without application here.

The Board, agreeing with petitioner's statement quoted above, that the sole questions presented are questions of law as to the applicability of the proviso, thus states the questions.[4]

In complete disagreement with petitioner's claim that the dismissed charges were based on unfair labor practices occurring within six months prior to the filing of the charge with the Board and service of a copy thereof, the Board, insisting that this is not so, supports its view with a statement of the facts [5] of record and of the reasons [6] for the conclulsion that the proviso requires the dismissal of the charge.

We agree with the reasoning and with the conclusion of the Board. We think it is the union and not the Board which mis-

4. "1. Whether Section 10(b) precludes the Board from basing a decision upon unfair labor practices committed over six months prior to the filing and service of the charge.

"2. Whether substantial evidence supports the Board's finding that the striking employees had been replaced over six months before the filing and service of the charge."

5. These are the facts as its brief states them:

Petitioner's first unfair labor practice charge against the Company was served on Dec. 18, 1948. The Board accordingly concluded that it was precluded from finding that the Company committed any unfair labor practice prior to June 18, 1948.

Prior to this cut-off date, between Nov. 17, 1947, and Jan. 19, 1948, the Company repeatedly refused to recognize the Union as the bargaining agent of its employees. On Jan. 19, 1948, almost all of the Company's employees went on strike to protest the Company's refusal to bargain. Between Jan. 19 and Mar. 4, 1948, the Union made two unsuccessful attempts to reopen negotiations with the Company. The record does not show that the Union made any subsequent request for recognition. By the middle of March, 1948, the uncontradicted evidence shows that all of the strikers had been replaced by new employees, and the Company's operations were back to normal.

On June 20, 1948 (less than six months before the filing and service of the first charge in this case), two representatives of the Union requested the Company to reinstate the strikers. Since the Company was operating at full capacity, no job vacancies existed at this time, and the Company refused reinstatement. The Union renewed its request on July 12, 1948, and again the Company refused to reinstate the strikers. Almost a year later, and after the charges in this case had been filed, the Union made its next and last request for mass reinstatement.

This too was denied. The record also shows that twelve strikers who approached the Company and requested positions at times after June, 20, 1948, when there were openings, were hired.

Upon these facts the Board concluded that since the strikers had been replaced by June 18, 1948, they were not entitled to reinstatement unless their strike had been caused or prolonged by unfair labor practices committed prior to that date. The Board held, however, that the limitations proviso precluded a finding that any unfair labor practices were committed prior to June 18. Consequently the Board concluded that it could not regard the strikers as unfair labor practice strikers, and that the Company was therefore free permanently to replace them. The Board similarly concluded that it could not predicate any illegal refusal to bargain on events prior to June 18, 1948, and that the Union failed to established that it represented a majority of the employees (most of whom were replacements of strikers) at any time after that date.

6. As stated in its brief, these are:

"This Court's recent decision in Collins Baking Co. v. N. L. R. B., 193 F.2d 483, 486, reemphasized the well settled rule that the right of a replaced striker to reinstatement upon his application depends upon whether the strike was caused or prolonged by unfair labor practices. If the strike was not an 'unfair labor practice strike', the replaced striker has no right to reinstatement. Since in the instant case the strikers had been replaced by June 18, 1948, they would have no right to reinstatement at the time of their application unless the strike had been caused or prolonged by an unfair labor practice committed prior to that date.

"Under Sec. 10(b) of the Act, however, the Board could base its decision only on unfair labor practices occurring on and after June 18, 1948, six months before the filing and service of the charge.

apprehends the meaning and effect of the proviso, and, misapprehending, misapplies it.

As the Board correctly points out, the duty to bargain arises upon request. N. L. R. B. v. Columbian E. & Stamping Co., 306 U.S. 292, at pages 297–299, 59 S.Ct. 501, 83 L.Ed. 660. The Union's theory, of a continuing obligation to bargain, which, without request, renewed itself each day after the first refusal, that, in short, the first refusal created and set in motion a continuing tort, therefore, will not do. Cf. N. L. R. B. v. Pennwoven, Inc., 3 Cir., 194 F. 2d 521.

We agree with the Board, too, that petitioner's other contention, that the refusal after June 18th, to employ the strikers was an unfair labor practice, overlooks the basic fact that by June 18, 1948, the strikers had been replaced so that the union had no further bargaining rights and the strikers had no right to reinstatement. N. L. R. B. v. Fansteel Metallurgical Corp., 306 U.S. 240, at pages 261–262, 59 S.Ct. 490, 83 L.Ed 627, 123 A.L.R. 599.

Finally, we agree with the Board that what the union is in effect seeking to do is to use the happenings after June 18th, as mere connective incidents wherewith to bridge the fatal gap in time between the happenings really relied on as unfair labor practices and the six months' bar, hoping thereby to cross over the six months barrier which otherwise would preclude the charge.

The order of dismissal was rightly entered. The petition to set it aside is denied.

This is not to say that all relevant facts occurring prior to June 18, 1948, could not be found by the Board and used to cast light upon conduct occurring within the six month period. F. T. C. v. Cement Institute, 333 U.S. 683, 705 [68 S.Ct. 793, 92 L.Ed. 1009]; N. L. R. B. v. Clausen, [3 Cir.] 188 F.2d 439, 443, certiorari denied, 342 U.S. 868, [76 S.Ct. 108]; Superior Engraving Co. v. N. L. R. B., [7 Cir.] 183 F.2d 783, 791, certiorari denied 340 U.S. 930 [71 S.Ct. 490, 95 L.Ed. 671]. But the rights of the employees in this case hinge upon the question whether the events prior to June 18, 1948, amounted in law to an unfair labor practice, and it is this question which is foreclosed by Sec. 10(b). Indeed the only reason 'unfair labor practice strikers' acquire rights superior to those of 'economic strikers' is the need for remedying the original unfair labor practice by restoring the status that existed when it was committed. Remington Rand Co., 2 N.L.R.B. 626, 737, enforced, 94 F.2d 862, certiorari denied, 304 U.S. 576, 585 [58 S.Ct. 1046, 82 L.Ed. 1540]. Under the Union's contention the Board would be free to remedy an unfair labor practice which under Section 10(b) the Board could not find.

\*    \*    \*    \*    \*

"The Union's contention that the Company was under a 'continuing obligation' to bargain with the Union and not to discriminate, again overlooks the basic fact that by June 18, 1948, the strikers had been replaced, so that the Union had no further bargaining rights and the strikers had no right to reinstatement. N. L. R. B. v. Fansteel Metallurgical Corp., 306 U.S. 240, 261–262 [59 S.Ct. 490, 83 L.Ed. 627]. The strikers had a right not to be discriminated against in the filling of vacancies (as in the Textile Machine Works case [N. L. R. B. v. John Deere Plow Co., 5 Cir., 187 F.2d 26] relied on by the Union), but as noted above the evidence falls far short of establishing that the Company was guilty of any such discriminatory practices.

"Insofar as the Union contends that the Company's duty to bargain was a continuing obligation which renewed itself each day after the first refusal, the short answer is that the duty to bargain (unlike the duty to register for the draft in the Fogel case [Fogel v. U. S., 5 Cir., 162 F.2d 54] relied on by the Union) arises upon request. N. L. R. B. v. Columbian Enameling & S. Co., 306 U.S. 292, 297–299 [59 S.Ct. 501, 83 L.Ed. 660]. The Union made no request to bargain between March 4, 1948, and the time the replacement of the strikers destroyed its status as majority representative. The refusal to bargain on March 4 is outside the period properly before the Board on the Union's charge, and the refusal to negotiate over the return of the strikers occurred at a time when the Union had lost its majority."