NATIONAL LABOR RELATIONS BOARD
v. BROWN & ROOT, Inc. et al.

No. 14680.

United States Court of Appeals,
Eighth Circuit.

March 24, 1953.
Rehearing Denied July 8, 1953.

Harvey B. Diamond, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen., Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Owsley Vose, Atty., National Labor Relations Board, Washington, D. C., on the brief) for petitioner.

Ben H. Powell, Jr., Austin, Tex. (William A. Brown and Powell, Wirtz & Rauhut, Austin, Tex., on the brief) for respondent Ozark Dam Constructors.

Ben H. Powell, Jr., Austin, Tex. (W. Morgan Hunter, William A. Brown and Powell, Wirtz & Rauhut, Austin, Tex., on the brief), for respondent Flippin Materials Co.

Woll, Glenn & Thatcher, Herbert S. Thatcher, J. Albert Woll, James A. Glenn and Joseph E. Finley, Washington, D. C. amicus curiae for American Federation of Labor, Building & Construction Trades Department, A.F.L., and Fort Smith, Little Rock and Springfield Joint Council, A.F.L.

Before SANBORN, JOHNSEN and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

The National Labor Relations Board seeks, and the respondents [1] resist, the enforcement of an order of the Board issued June 27, 1952. 99 N.L.R.B. No. 153. The respondents are construction contractors and the organizers of two joint ventures, one to build and the other to furnish material for building a dam under separate government contracts.

The order is based upon a determination by the Board that the respondents are a single employer and have violated Section 8(a)(1) and (3) of the National Labor Relations Act, 49 Stat. 449, as amended by the Labor Management Relations Act, 1947, 61 Stat. 136, 29 U.S.C.A. § 151 et seq., by discriminating with respect to the reinstatement of employees who were on strike from December 3, 1948, until December 14, 1949. The order, in effect, requires the respondents to refrain from discriminating against employees because of their participation in the strike or other protected activity, from discouraging, by acts of discrimination, membership in Fort Smith, Little Rock and Springfield Joint Council, A.F.L. (hereafter called Joint Council), or in any other labor organization, and from in any manner interfering with the exercise by employees of their statutory rights. The order also requires the respondents

---

[1] Brown and Root, Inc., Wunderlich Contracting Company, Peter Kiewit Sons Company, Winston Bros. Company, David G. Gordon, Condon-Cunningham Co., Morrison-Knudson Company, Inc., J. C. Maguire & Company, and Chas. H. Tompkins Co., doing business as Joint Venturers under the name of Ozark Dam Constructors and Flippin Materials Co.

to offer reinstatement to striking employees who were found by the Board to have been unlawfully refused reinstatement, and to make whole all employees who the Board found had lost pay as a result of unfair labor practices of the respondents.

The following questions are presented for decision:

1. Was the Board barred by the provision of Section 10(b) of the Act "That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board", from finding that the strike resulted from an unfair labor practice?

2. Was the Board precluded from finding that the respondents were a single employer, because of the prior proceeding against the same respondents as separate employers, which proceeding culminated in the decision of this Court in National Labor Relations Board v. Ozark Dam Constructors and Flippin Materials Co., 8 Cir., 190 F.2d 222?

3. Were proper applications for reinstatement shown to have been made by the strikers found by the Board to have been discriminated against with respect to re-employment after the strike?

4. Was there sufficient evidence to support the determination of the Board, (a) that jobs or vacancies in excess of the number of strikers applying for reinstatement were available; (b) that the respondents had discriminated with respect to reinstatement against employees of Ozark Dam Constructors (hereafter referred to as Ozark) represented by the International Association of Machinists (hereafter called I.A.M.); (c) that respondents had discriminated against striking employees to discourage membership in any labor organization; and (d) that respondents had not in good faith substantially complied with their obligations to reinstate strikers?

5. Was the formula prescribed by the Board for computing back pay invalid?

The factual background of this controversy is not seriously disputed and may be stated, in substance, as follows:

Ozark is a joint venture composed of the construction contractors named as respondents. In April, 1947, Ozark, under a contract with the United States, undertook the construction of the Bull Shoals Dam across the White River in Arkansas, a multimillion-dollar project requiring a large labor force. In November, 1947, Flippin Materials Co. (hereafter called Flippin), a separate joint venture composed of the same contractors, undertook, under another contract with the government, to supply Ozark with crushed stone aggregate for the project. The government-owned quarry operated by Flippin was seven miles from the dam site, and the crushed stone was delivered to Ozark at the dam site by a conveyor belt line.

On March 4, 1948, the Joint Council filed with the Board a petition for certification as bargaining representative of Ozark's employees. The I.A.M. intervened. The Board, after a hearing and the holding of elections, certified the Joint Council as exclusive representative of two units of Ozark's employees, and the I.A.M. as representative of two other units. Flippin and its employees were not involved in the representation proceeding.

Thereafter the Joint Council filed a charge against Ozark alleging violations of Section 8(a)(1) and (5) of the Act. This was followed by an amended charge, and by a second amended charge in which for the first time Flippin was accused of having violated Section 8(a)(1) by interfering with the rights of its employees. Flippin was not charged with a refusal to bargain collectively. On these charges, the Board, in January, 1949, issued a complaint against Ozark and Flippin, charging Ozark with having refused to bargain in good faith with the Joint Council (a Section 8(a)(5) violation), and charging both Ozark and Flippin with having interfered with the rights of their employees (a Section 8(a)(1) violation). The Board on October 13, 1949, ordered both Ozark and Flippin to refrain from interfering with the protected rights of their employees, and ordered Ozark alone to bargain with the Joint Council as the representative of those employees of Ozark for whom the Council had been certified as the representative. 86 N.L.R.B. 520. The Board applied to this Court for

enforcement of the Board's order of October 13, 1949. 190 F.2d 224. Ozark and Flippin each resisted enforcement of the order on the ground that the Board was without jurisdiction of their labor relations, which they asserted did not affect interstate commerce. Flippin also contended that there was no adequate evidentiary basis for a finding that it had interfered with the rights of its employees. This Court held that the Board had jurisdiction to make the order, and granted enforcement as against Ozark, but denied enforcement as against Flippin because of the insufficiency of the evidence to sustain the finding of the Board that Flippin had been guilty of a violation of Section 8(a)(1). 190 F.2d 222, 227–228.

While the proceeding to which we have referred was pending, the Joint Council on December 2, 1948, called a strike on account of the failure of Ozark to bargain with it in good faith. Some of the Ozark employees who were represented by I.A.M. and some Flippin employees joined the strikers. Both Ozark and Flippin were picketed. The strike was apparently not a success. Picketing of Ozark and Flippin ceased about August 1, 1949. The strike was terminated December 14, 1949, as the result of some preliminary negotiations and a meeting between representatives of the Joint Council and representatives of the respondents.

At the meeting of December 14, 1949, the Joint Council requested in writing that the strikers, "or those of them who present themselves, be immediately employed by the Ozark Dam Constructors." Ozark gave to the Joint Council a letter stating that it would "re-employ such persons to the extent required by the Labor Management Relations Act of 1947 and in the manner required thereby upon their application to Ozark Dam Constructors for such reemployment"; and that "this will require Ozark Dam Constructors to replace existing employees who have been hired for the first time since 4 December 1948 with such employees who have been out since 3 December 1948 and who re-apply for such jobs."

It was agreed at the meeting of December 14, 1949, that a committee of the Joint Council could examine Ozark's payroll to ascertain how many men had been employed by Ozark in the various classifications since the strike commenced, and that the Council should initiate a program of referring the strikers to Ozark for reinstatement.

The reinstatement program was at first a joint undertaking of the Joint Council and Ozark. The Council referred strikers to Ozark for reinstatment, and many were reinstated. By mutual agreement of December 19, 1949, the reinstatement program was discontinued over the holidays and until January 3, 1950. On January 3 the Joint Council was advised that Pat Earnest had been designated by Ozark to continue the reinstatement program. The Council furnished Earnest with a list of strikers purportedly still available for reinstatement and who desired reinstatement. A disagreement arose between the Council and Earnest as to how far Ozark had already met its obligations for the reinstatement of strikers, and as to whether employees of Flippin and employees of Ozark represented by I.A.M., who had participated in the strike, were entitled to reinstatement through the Joint Council.

A conference of representatives of the Council and representatives of the respondents was held on January 10, 1950, relative to the reinstatement of more of the strikers. The Council contended that, while Ozark had reinstated 74 strikers, there were many more eligible for and entitled to reinstatement. There was a disagreement relative to the number of positions available to strikers. The Joint Council contended that employees of Flippin and employees of Ozark represented by I.A.M., who participated in the strike, were unfair labor practice strikers entitled to have replacements discharged, while the respondents contended that such employees were, at most, economic strikers entitled to fill vacancies, if any. The Council also took the position that employees of the respondents who had been employed prior to the strike, but who were not working when the strike was called and were subsequently rehired, were not continuous employees and were subject to replacement by strikers. The respondents took a contrary position. They asserted

that their obligation to reinstate strikers would be fulfilled when as many strikers were re-employed as had been replaced during the strike, and that employees hired since the strike in excess of the number of strikers replaced could be retained as an "overload" or "luxury" at respondents' expense, and need not be discharged in order to make places for strikers.

On January 15, 1950, the Joint Council wrote identical letters to Ozark and Flippin demanding that they reinstate strikers whose names were listed. On January 24, 1950, Ben H. Powell, Jr., counsel for and representative of respondents, replied on behalf of Ozark that, due to the progress made in the work, employment had been reduced about fifty per cent and that jobs existing at the time the strike commenced had been terminated. He suggested that employees on the Joint Council's list be directed to Ozark's employment office, and stated that applications for re-employment would be accepted in the order of appearance, and that Ozark would endeavor to employ as many of such men as possible. Powell's reply, of the same date, on behalf, of Flippin, read as follows:

"We have received your letter dated January 15, 1950, addressed to Flippin Materials Company.

"As you do not represent the employees of Flippin Materials Company, we feel that it is inappropriate to confer with you with regard to those employees. As you know, Flippin Materials Company employs men required for its operations at the employment office on the job site, and Flippin Materials Company gives preference in employment to those persons who have heretofore worked for the company and who are qualified to perform the work which Flippin Materials Company is performing."

This exchange of letters terminated any cooperative effort of the Joint Council and the respondents for a reinstatement of strikers. The Council, however, advised strikers to apply to Ozark for reinstatement. Some were hired and some were not. Ozark from time to time thereafter sent letters to strikers offering reinstatement, and many, upon application, were reinstated.

On January 27, 1950, the Joint Council filed with the Board a charge against the respondents, as a single employer, asserting that "the Joint Venture refused to hire the employees on the attached list because of their membership in and activities on behalf of the undersigned labor organization and other concerted activities for the purpose of collective bargaining and other material [mutual] aid and protection." An amended charge was filed on March 2, 1951.

Based on these charges, the General Counsel of the Board (hereafter called the Board), on March 13, 1951, issued a complaint in which it was, in substance, alleged that Ozark and Flippin constituted a single employer within the meaning of the Act; that the strike of respondents' employees was due to the unfair labor practices of the respondents; that they had refused to reinstate certain of the striking employees who were entitled to reinstatement, and belatedly reinstated others, and reinstated and terminated the employment of still other strikers; that the failure and refusal of the respondents to fulfill their obligations relative to reinstatement of strikers was due to their being members of the union and having participated in the strike, and that the respondents had discriminated in regard to the hire and tenure of employment of the striking employees in order to discourage membership in the union, and in violation of Section 8(a)(1) and (3) of the Act.

The respondents in their answers to the Board's complaint denied that Ozark and Flippin were a single employer, denied that they had committed any unfair labor practices, and asserted that the complaint was based on unfair labor practices alleged to have occurred prior to December 3, 1948, and that the six months' period for the filing of charges had expired when the Joint Council filed the charges on which the Board's complaint was based.

After issues were joined, the usual proceedings followed. The Trial Examiner found that the respondents constituted a single employer, and found that all of the

striking employees, whether on the payroll of Ozark or of Flippin and whether represented by the Joint Council or by I.A.M. or by no labor organization, were unfair labor practice strikers entitled to preferential reinstatement, and that all could have been reinstated promptly by the respondents after the termination of the strike on December 14, 1949. The Examiner found that the obligation of the respondents to reinstate strikers accrued as of that date. He separately listed the striking employees who he found had been discriminately denied reinstatement, those found to have been belatedly reinstated, and those found to have been otherwise discriminated against with respect to reinstatement. He found that the respondents had committed the unfair labor practices charged against them, and recommended a remedy, including reinstatement of strikers found to have been improperly denied reinstatement, and reimbursement for loss of pay of those strikers and of those who were belatedly reinstated. Ozark and Flippin each filed exceptions to the Intermediate Report of the Trial Examiner.

The Board determined that Ozark and Flippin were a single employer, notwithstanding the fact that in the prior proceeding before the Board and this Court they had been treated as, and inferentially held to be, separate employers; that the instant proceeding was not barred or affected by the limitation provision of Section 10(b) of the Act; that the Ozark strikers represented by the Joint Council and the Flippin strikers (who were unrepresented) were unfair labor practice strikers entitled to have replacements discharged to make places for them, but that the Ozark strikers who were represented by I.A.M. were economic strikers who were not entitled to have replacements discharged, but were entitled to their former or equivalent positions if available and if applied for.

The Board also determined that the demand of the Joint Council on January 15, 1950, for the reinstatement of the strikers not previously reinstated, whose names appeared on the list attached to the demand, was an effective application for reinstatement by all those on the list, and that they were not thereafter individually required to apply for reinstatement in order to be entitled to be re-employed.

The Board rejected the theory of respondents that they had fulfilled their obligations to unfair labor practice strikers when they had reinstated as many as had been replaced during the strike and were justified in retaining replacements in excess of that number as an "overload" or "luxury". The Board concluded that the evidence did not support this theory, and pointed out that no replacements had been discharged by the respondents after the strike terminated.

The Board, in Schedule A of Appendix A attached to its order, listed the striking employees who it found were entitled to full reinstatement upon specified conditions. It listed in Schedule B the unfair labor practice strikers found by it to have been belatedly reinstated. In Schedule C the Board listed I.A.M. strikers who it considered would be entitled to the same remedies as the strikers listed in Schedules A and B, if, in the compliance investigation to be conducted by the Board, it should develop that there were available vacancies for which any of such employees had made personal application.

The remedy prescribed by the Board provided for the reinstatement, in so far as possible, of the strikers listed in Schedule A, the reimbursement for loss of pay of those listed in Schedule A and in Schedule B, the reinstatement with back pay for those listed in Schedule C if warranted by the compliance investigation into the availability of jobs when and if applied for, and a cease and desist order requiring the respondents to refrain from the unfair labor practices found to have been committed by them, and from in any manner infringing upon the rights of their employees guaranteed in Section 7 of the Act.

The Board in its decision reserved "the right to modify the back pay and reinstatement findings herein if made necessary by a change in circumstances since the hearing or in the future or to make such supple-

ments thereto as may hereafter become necessary in order to define or clarify their application to a specific set of circumstances not now apparent."

We shall briefly state our conclusions with respect to the questions raised by the respondents which we think merit discussion.

■ It us our opinion that the issuance of the complaint by the Board in the instant proceeding was not barred by the limitation provision of Section 10(b) of the Act, and that the Board was not precluded from determining that the strike was caused by an unfair labor practice of Ozark. This, notwithstanding the fact that Ozark's refusal to bargain, which caused the strike, occurred long prior to the date the respondents were charged with a refusal to reinstate strikers, and notwithstanding the decision of the Board in the Matter of Greenville Cotton Oil Company and American Federation of Grain Millers, A.F.L., 92 N.L.R.B. 1033, which was sustained by the United States Court of Appeals for the Fifth Circuit in American Federation of Grain Millers, A. F. of L. v. National Labor Relations Board, 5 Cir., 197 F.2d 451. In that case, as in this, the principal unfair labor practice alleged in a timely charge was the discriminatory refusal of the employer to reinstate strikers. The Board held that this refusal would not be an unfair labor practice unless it could be shown that the strikers, because of an unfair labor practice occurring within six months before the charge was filed, had become unfair labor practice strikers before being replaced. The Board said (1034–1035 of 92 N.L.R.B.):

"* * * Only if they [the strikers] can show that their strike was caused or prolonged by unfair labor practices are they entitled to preferred treatment.

"But it is just such a showing which the proviso to Section 10(b) expressly prohibits, for any finding of an unfair labor practice here would necessarily have to be 'based upon' unfair labor practices occurring more than 6 months

prior to the charge. Because the proviso thus precludes finding an unfair labor practice strike and the consequent discriminatory refusal to reinstate the strikers, we must dismiss this allegation of the complaint."

We note that the Trial Examiner in the Greenville Cotton Oil Company case was of the opinion that, despite the proviso of Section 10(b), evidence to show that the strike was caused by a refusal of the employer to bargain with the union, which refusal occurred more than six months prior to the filing of the charge alleging discrimination with respect to reinstatement, was admissible to show the nature of the strike and the reinstatement rights of the strikers. The Trial Examiner said (page 1058 of 92 N.L.R.B.):

"* * * Although the statute forbids the issuance of complaints and thereby precludes findings of violations on conduct occurring without the 6 months' period, it does not forbid the introduction of relevant evidence bearing on the issue whether a violation occurred within such period. In other words, the Section 10(b) proviso enacted a statute of limitations (cf. Cathey Lumber Co., supra [86 N.L.R.B. 157]) and not a rule of evidence. Therefore, antecedent evidence may be considered, where relevant, to the extent that it establishes or throws light on the nature and meaning of conduct or events which occurred within the prescribed period, or is otherwise relevant to the inquiry whether violations occurred during such period."

The Board in the instant case has attempted to distinguish the Greenville case upon the ground that in the instant case a separate timely charge was filed with respect to the unfair labor practice causing the strike which culminated in a finding by the Board (86 N.L.R.B. 520) and by this Court, 190 F.2d 222, of a violation by Ozark of Section 8(a)(5) of the Act. Whether this distinction is sound we need not determine, since we are of the opinion that evidence to establish the nature of the strike,

the reinstatement rights of the strikers, and the reinstatement obligations of the respondents, was admissible, and that the limitation provision of Section 10(b) did not preclude the Board from finding that the strike was an unfair labor practice strike. A contrary conclusion seems to us illogical. The charge in this case is not based upon the failure of Ozark to bargain with the Joint Council prior to December 3, 1948, but upon the respondents' alleged refusal to reinstate strikers whose status was such as to entitle them to reinstatement.

 We are satisfied that the purpose of the proviso of Section 10(b) was to prevent the issuance by the Board of complaints upon charges based upon stale unfair labor practices, and not to deprive striking employees of their rights to reinstatement upon the termination of an unfair labor practice strike. Under the respondents' theory, as we understand it, the Board would be powerless to deal with discriminatory refusals to reinstate unfair labor practice strikers if a strike caused by an employer's refusal to bargain with their representative lasted for more than six months.

 The fact that in the instant case the amended charge was filed March 2, 1951, long after the expiration of six months from the occurrence of the unfair labor practice relative to reinstatement is not of consequence, since the amended charge did not materially change the subject matter of the original charge, filed January 27, 1950, but merely supplemented it and therefore related back. See and compare, Kansas Milling Co. v. National Labor Relations Board, 10 Cir., 185 F.2d 413, 415–416.

 While the question whether the Board was precluded from consolidating Ozark and Flippin into one employer for the purpose of this proceeding is not free from doubt, we are of the opinion that the Board's determination in this regard is not sustainable, because of the prior proceeding against the respondents as separate employers, culminating in our decision in National Labor Relations Board v. Ozark Dam Constructors, supra, 190 F.2d 222.

The issue whether Ozark and Flippin were joint employers was not squarely presented nor squarely decided in that case. But we pointed out in our opinion that in the Board's complaint the respondents were referred to as " 'joint respondent,' apparently upon the theory that they were not separate legal entities." We also showed that the respondents claimed to be separate employers. Our decision and order in that case was based upon a conclusion that the respondents were not a single employer, and was inconsistent with any other determination.

 The general rule is that "Any right, fact or matter in issue and directly adjudicated, or necessarily involved in the determination of an action before a competent court in which a judgment or decree has been rendered upon the merits, is conclusively settled by the judgment therein and cannot again be litigated between the same parties and their privies, whether the claim, demand, purpose or subject-matter of the two suits is the same or not." Henderson v. United States Radiator Corporation, 10 Cir., 78 F.2d 674, 675; New York Life Insurance Co. v. Cooper, 10 Cir., 167 F.2d 651, 654; State of Oklahoma v. State of Texas, 256 U.S. 70, 85, 41 S.Ct. 420, 65 L.Ed. 831; Tait v. Western Maryland Railway Co., 289 U.S. 620, 624–626, 53 S.Ct. 706, 77 L.Ed. 1405.

We think that the question whether the respondents were one employer or two employers was necessarily involved in the prior proceeding, and that the Board was precluded from finding in this proceeding that they were one employer and that the employees of Flippin were unfair labor practice strikers because of Ozark's refusal to bargain with the Joint Council, which concededly represented only employees of Ozark. But if the issue was not res judicata in a strict sense, we are still of the opinion that there is an inadequate basis in the record for visiting the sins of Ozark upon Flippin. As the Supreme Court has said in Universal Camera Corporation v. National Labor Relations Board, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456, "* *

courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past."

■ We think that the Board was justified in finding that on January 15, 1950, the Joint Council unequivocally demanded that Ozark reinstate strikers whom the Council represented and whose names were listed, and that thereafter they were not required to apply individually to Ozark in order to be entitled to reinstatement. See and compare, M. H. Ritzwoller Co. v. National Labor Relations Board, 7 Cir., 114 F.2d 432, 436–437; Eagle-Picher Mining & Smelting Co. v. National Labor Relations Board, 8 Cir., 119 F.2d 903, 914; Olin Industries, Inc. v. National Labor Relations Board, 5 Cir., 191 F.2d 613, 617–618. We can think of no valid reason why a labor union which is the collective bargaining agent for employees who have been out on strike cannot effectively represent them in applying for reinstatement, even though the employer insists that they apply personally for re-employment.

■ If in its compliance investigation the Board shall discover that strikers who were named in the Joint Council's list attached to its demand of January 15, 1950, and who the Board has found were entitled to reinstatment and back pay, were not in fact available for positions or that positions were not available for them, we think the Board, under its reservation of jurisdiction, can conform its ultimate reinstatement and back pay order to meet that situation. See and compare, Wallace Corporation v. National Labor Relations Board, 4 Cir., 159 F.2d 952, 954; National Labor Relations Board v. Bird Machine Co., 1 Cir., 174 F.2d 404.

■ It is our conclusion that, under the evidence in this case, the questions whether jobs were available for strikers who personally or through the Joint Council sought reinstatement, whether Ozark had dis-

criminated in refusing reinstatement to strikers represented by I.A.M., whether the refusal of Ozark to reinstate or to reinstate more promptly strikers who were entitled to reinstatement was to discourage membership in the Joint Council or other labor organizations, and whether Ozark had in good faith substantially complied with its obligation to reinstate strikers, were questions of fact for the Board and are not questions of law for this Court. We cannot say that there is no substantial evidentiary support for the Board's determination of any of these questions. This Court may not "displace the Board's choice between two fairly conflicting views, even though the court" might "justifiably have made a different choice had the matter been before it de novo." Universal Camera Corporation v. National Labor Relations Board, supra, page 488 of 340 U.S. at page 465 of 71 S.Ct., 95 L.Ed. 456.

■ Questions of motive, intent, good faith, and the like, if at all doubtful, are questions of fact, and men may reasonably be presumed to intend the natural and necessary consequences of what they do. Myres v. United States, 8 Cir., 174 F.2d 329, 334 and cases cited; Owens v. United States, 8 Cir., 197 F.2d 450, 451.

The contention of the respondents that the formula prescribed by the Board for computing back pay is improper was based upon the decision of the United States Court of Appeals for the Fifth Circuit in National Labor Relations Board v. Seven-Up Bottling Co. of Miami, Inc., 5 Cir., 196 F.2d 424. That case was on January 12, 1953, reversed by the Supreme Court, 344 U.S. 344, 73 S.Ct. 287, and the question of the propriety of the formula need not be discussed.

Enforcement of the order of the Board in so far as it relates to Ozark and the employees of Ozark is granted. In so far as the order affects Flippin and the employees of Flippin, the petition for enforcement is denied.