**NATIONAL LABOR RELATIONS BOARD**
**v. BROWN & ROOT, Inc., et al.**

No. 14680.

United States Court of Appeals
Eighth Circuit.

July 8, 1953.

Harvey B. Diamond, Atty., National Labor Relations Board, Washington, D. C. (George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, and Owsley Vose, Atty., National Labor Relations Board, Washington, D. C., on the brief) for petitioner.

Ben H. Powell, Jr., Austin, Tex. (William A. Brown and Powell, Wirtz & Rauhut, Austin, Tex., on the brief) for respondent Ozark Dam Constructors.

Ben H. Powell, Jr., Austin, Tex. (W. Morgan Hunter, William A. Brown and Powell, Wirtz & Rauhut, Austin, Tex., on the brief), for respondent Flippin Materials Co.

Woll, Glenn & Thatcher, Herbert S. Thatcher, J. Albert Woll, James A. Glenn and Joseph E. Finley, Washington, D. C., amicus curiae for American Federation of Labor, Building & Construction Trades Department, A. F. L., and Fort Smith, Little Rock and Springfield Joint Council, A. F. L.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

In a petition for rehearing the National Labor Relations Board has asked that this Court remand so much of this case as will enable the Board to investigate and determine whether employees of Flippin Materials Co. were unlawfully discriminated against because of their participation in the strike against Ozark Dam Constructors.

In its petition the Board says:

"* * * The Board made no finding with regard to whether there were vacancies for Flippin strikers at the time they applied for reinstatement because, having found that Ozark and Flippin were one employer, it concluded that the Flippin employees were unfair labor practice strikers just as the Ozark employees were. Consequently the Board did not reach the question whether the Flippin employees, although not unfair labor practice strikers, were *economic strikers entitled to*

protection against discrimination for having taken part in the strike. A remand of the cause to the Board, therefore, is appropriate to enable the Board to pass upon the question of the rights of the Flippin employees as economic strikers, a question which neither the Board nor the Court has as yet considered."

■ The purpose of a petition for rehearing, under the Rules of this Court, is to direct the Court's attention to some material matter of law or fact which it has overlooked in deciding a case, and which, had it been given consideration, would probably have brought about a different result. It is not contended that in deciding this case this Court failed to consider any issue which was before it for review. However, we have had no desire to deny the Board's petition upon technical grounds, and for that reason we invited the parties to file briefs to assist us in deciding whether the petition should be granted or denied.

This controversy has been long drawn out, bitterly contested, and has involved much labor and expense. It has been before this Court twice. National Labor Relations Board v. Ozark Dam Constructors, 8 Cir., 190 F.2d 222; 8 Cir., 203 F.2d 139. The Board throughout the proceedings has been diligent and aggressive in protecting the rights of the employees involved. The controversy must sometime and in some way come to an end.

The issues which the Board now wishes to investigate and determine are highly controversial. Flippin denies that its striking employees, who were comparatively few in number, were economic strikers and insists that their status was not such as to entitle them to any preferential treatment with respect to reinstatement to jobs, if jobs were available. The Board's position in the proceedings culminating in this Court's last decision was that the status of the Flippin strikers was that of unfair labor practice strikers. That contention was controverted by Flippin and decided adversely to the Board by this Court. The Board now seeks to change its position and to explore the question whether, at the time the strike against Ozark was terminated, Flippin had jobs available to which Flippin strikers were preferentially entitled and which were denied to them. There is no assurance that the Board's proposed investigation will disclose that Flippin had jobs available upon the termination of the strike or that Flippin unlawfully discriminated against its striking employees with respect to reinstatement.

■ Because of the improbability that the investigation and determination of the issues which the Board seeks to inject into this controversy at this late date will be of any substantial benefit to anyone, we have concluded that the Board's petition should be denied.

It is so ordered.

JOHNSEN, Circuit Judge (dissenting).

I agree that the Board should not be given leave to reopen formally or plenarily the proceeding against Flippin, to, allow it to engage in additional investigation, take additional testimony, and subject Flippin to additional hearing, as a basis for making resolution of the rights of Flippin's employees as economic or sympathy strikers. The responsibility of seeing that this aspect of the case was covered, investigatorily, evidentially, and forensically, rested upon the Board in the proceedings already had.

As the Board itself stated in its decision, the primary question which it was necessary for it to consider and determine in relation to Flippin was "whether the Flippin strikers were economic or unfair labor practice strikers." That question it could not of course resolve until the case had been submitted to it. And, without at least some reservation, such as was made by it in the situation as to another group of economic strikers (IAM), I can see no reason or basis on the face of the matter for the possible rights of Flippin's employees as economic strikers not having been covered (if that was not done) just as fully evidentially as their possible rights as unfair labor practice strikers were covered, so that the Board would be in a position to deal remedially with whichever status that it might find that the employees had occupied. In any event, there is here no show-

ing of "reasonable grounds for the failure to adduce such evidence in the hearing before the Board", such as 29 U.S.C.A. § 160(e) makes the basis for commanding consideration of a request to reopen a proceeding to take additional evidence.

But with this declaration made, there still remains the question of whether, in the spirit of the statute and as a matter of legal fairness, the Board should or should not be given the opportunity to consider and deal with the right of the Flippin strikers to relief from such reemployment discrimination as could be said to have been practiced against them in their status of economic or sympathy strikers, on the basis of the present record, without further outside investigation, testimony and hearing. I think that this opportunity should be given. Such consideration as the Board could, and would in the exercise of its functions have been willing to, make on the present record, of the question of discrimination in reemployment practiced against any strikers individually, because of their participation in the strike, had it held them to be economic or sympathy strikers instead of unfair labor practice strikers, these employees should not be deprived of legally, just because the Board has erroneously held them to be unfair labor practice strikers instead of sympathy strikers.

I may add that I would not urge that the opportunity for this consideration be given, if it could be said that the present record affords no basis at all for it. Even the abbreviated printed record, however, shows that the question of discrimination in relation to this aspect of the case was apparently evidentially covered, in some measure or as to some employees, at least. Thus, the Board made a specific finding that a Flippin employee named Reed had made personal application for reinstatement on a certain date, and that "he was denied reinstatement because of his strike participation." As to another employee named Higley, there similarly was a specific finding that he had applied for reinstatement at a certain time to his previous job as truck driver; that there then existed such a job vacancy; and that "his proper application to the vacant job had been rejected." Again, as to another employee named Schumacher, the Board said that he had made application to be rehired at a certain time but was not rehired until six months later, although Flippin in the meantime took on an outside applicant to fill a job of the character involved.

I do not of course presume to pass in any way upon the validity of these findings in relation to the situation. I merely cite them to show that the present record is not on its face without some basis for allowing the Board to give consideration to the rights of Flippin's employees as economic or sympathy strikers, in the same manner that it would have been entitled to do, had it not erroneously held them to be unfair labor practice strikers. And I have not undertaken to comb the printed record, much less the fuller typewritten record, for the existence of evidence in relation to other employees as to whom the Board did not undertake to make such a specific finding, but might have done so, had it been considering the question of their rights otherwise than as unfair labor practice strikers. What I have said seems to me sufficient to require that the Board in fairness be given the opportunity to deal with the rights of Flippin's employees as economic or sympathy strikers on the present record, to the same extent that it could and would have done had it not made the legal error that it did, and to the end that the employer will not be left to profit and the employees will not be left to suffer penalty, just because of the Board's mistake.

I need hardly add that the according of this opportunity to the Board on the present record leaves the employer in no different position than it was when the case was originally submitted to the Board on the evidence taken, and that, of course, any order which the Board may make is in the same way subject to review, as it would have been had it been made at that time.