**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DEERFIELD SCREW MACHINE PRODUCTS COMPANY, and The Deerfield Manufacturing Company, Respondents.**

**No. 15443.**

United States Court of Appeals Sixth Circuit.

April 1, 1964.

Margaret M. Farmer, Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin Pollack, Atty., National Labor Relations Bd., Washington, D. C., on the brief.

J. Mack Swigert, Cincinnati, Ohio, for Deerfield Screw Machine Products Co., Frank H. Stewart, Cincinnati, Ohio, on the brief.

Nelson Schwab, Jr., Cincinnati, Ohio, for Deerfield Manufacturing Co., Graydon, Heard & Ritchey, by Nelson Schwab, Jr., Cincinnati, Ohio, on the brief.

Before CECIL and PHILLIPS, Circuit Judges, and PECK, District Judge.

PECK, District Judge.

The petitioner seeks enforcement of an order entered by it, and both respondents agree that the three questions here presented are as stated by the petitioner. The first such question is whether the two respondents constitute a single employer within the meaning of the National Labor Relations Act, as amended (29 U.S.C. § 151 et seq., hereinafter referred to as the Act). The second is whether the finding of the National Labor Relations Board (hereinafter referred to as the Board) that respondents, in violation of Section 8(a) (1) of the Act, coercively interrogated employees with respect to their union affiliations or activities, and attempted to restrain such activities by threats to close the plant was supported by substantial evidence. The final question is whether the Board's finding that in violation of Section 8(a) (3) and (1) of the Act respondents discriminatorily refused to recall or employ Wade Green after his layoff in order to discourage union activity by him or other employees was supported by substantial evidence.

The record discloses the incorporation of the respondent The Deerfield Manufacturing Company (hereinafter referred to as the Manufacturing Company) in 1946, and its continuous operation since that year. It further shows that for some period of time one department of the Manufacturing Company engaged in the business of making parts manufactured by screw machines, and that in 1957 the respondent Deerfield Screw Machine Products Company (hereinafter referred to as Screw Products) was formed as a separate corporation. It took over the work of the screw machine department. For a year or so Screw Products continued the operation within the plant of the Manufacturing Company, at which time it moved to separate premises some five or six miles distant which it continues to occupy. The Board's finding that Glenn F. Ball was the "majority stockholder of both corpo-rations," and the statement in its brief that he is "the owner" of the Manufacturing Company are not supported by the record, but it is established that Ball was president of both corporations and that he was the only owner of stock in both. Two other individuals held offices in both companies, other officers being employed by only one or the other corporation. The record does not disclose whether any individuals served as directors of both companies. While each did a limited amount of work for the other, this was contracted on a competitive bid basis, and the record affirmatively shows that work which could have been done by Screw Products was contracted for elsewhere by the Manufacturing Company when another bid was lower. Nowhere does the Board suggest that the separate incorporation of Screw Products or the removal of its operation from the premises of the Manufacturing Company was for any reason in any way connected with any alleged unfair labor practice.

The evidence further establishes that when the creation of Screw Products was in contemplation, Ball contacted a former employee, Sherman I. McDaniel, then employed in Atlanta, Georgia. Negotiations resulted in his return to Ohio and acceptance of the positions of vice president and general manager of the new company, positions he continued to hold at the times here material. McDaniel was the only stockholder in Screw Products other than Ball, but was not a holder of Manufacturing Company stock. Ball participated in the direction and control of "labor relations" at Screw Machine with McDaniel and the two of them were "in control of [its] operations," but there is no indication that McDaniel had anything to do with the operation of the Manufacturing Company. While not strongly persuasive, it is interesting to note that in referring to Screw Products and its operations witnesses entirely familiar with the situation habitually used the personal pronouns "he" and "his," meaning McDaniel. We cannot agree with the conclusion of the Board that the two corporations constituted a single

employer within the meaning of the Act, applying the tests established by decisions dealing with reasonably comparable situations. (National Labor Relations Board v. Aluminum Tubular Corp., 299 F.2d 595 (2nd Cir. 1962); National Labor Relations Board v. Brown & Root, Inc., 203 F.2d 139 (8th Cir. 1953), enforced subject to qualification 311 F.2d 447 (8th Cir. 1963); National Labor Relations Board v. Elias Brothers Big Boy, Inc., 325 F.2d 360, 362 (6th Cir. 1963); Lisowitz Enterprises, 108 NLRB 1479 (1954); Producers Rice Mill, Inc., 106 NLRB 119 (1953); Clark Thread Co., 79 NLRB 542 (1948)).

■ The conclusion here reached that respondents did not constitute a single employer within the meaning of the Act is dispositive of the second as well as the first of the questions presented. The interrogation of employees and attempted restraint of union activities claimed by the Board are alleged by it to have been done at the Manufacturing Company and involved only its employees and management personnel. As the result of a Board conducted election in 1961 a union had been certified to represent the employees of the Manufacturing Company. At that time the Board found, and the parties agreed, that that company was a single employer, and that certification continued through the times here involved. It is not contended by the Board that the relationship between the Manufacturing Company and the union so certified was affected adversely or otherwise by the allegedly coercive interrogations or attempted restraints, and since it and Screw Products are separate employers it is unnecessary to further explore this area. The observation is offered, however, that even if the two companies were to be considered a single employer it would tax the imagination to see how the course of conduct complained of at the Manufacturing Company could have affected labor relations at Screw Products.

■ Turning to the third question presented, it is first noted that Wade Green was an employee of Screw Products, and that his wife Myrtle Green was an employee of the Manufacturing Company, where she had been actively engaged in union activities at that plant on behalf of the union which had been certified there. Evidence was presented concerning a conversation between Mrs. Green and management personnel of the Manufacturing Company, but in the view we have adopted of the case that becomes immaterial. Green was one of six employees laid off at Screw Products as the result of a slowdown in work, concerning which there was no issue. Four of this group were subsequently re-employed, and the fifth accepted employment elsewhere. Wade Green charged that Screw Products' refusal to re-employ him resulted from some vague and ill-defined association with the union. The testimony on this point centered primarily about his allegedly having driven Mrs. Green around while she was engaged in union work, and about statements concerning the wearing of union buttons or badges, and is inconclusive at best.

It is here determined that there is not substantial evidence on the record as a whole to support the findings of the Board that the respondent Deerfield Screw Machine Products Company violated Section 8(a) (3) and (1) of the Act in discriminatorily refusing to recall or to employ Wade Green after his layoff in order to discourage union activity by him and by other employees of said respondent. See: National Labor Relations Board v. Southern Electronics Co., 312 F.2d 255 (6th Cir. 1963); National Labor Relations Board v. Audio Industries, Inc., 313 F.2d 858 (7th Cir. 1963).

The petition for enforcement of the Board's order will be denied.